RAUL MARTINEZ v. THE STATE.

No. 20016. Delivered March 1, 1939.
Rehearing Denied May 24, 1939.
Second Motion for Rehearing Denied October 11, 1939.

The opinion states the case.

*David E. Hume,* of Eagle Pass, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is failing to stop and render aid; the punishment, confinement in the penitentiary for one year and one day.

About 5 p. m. on the 28th of February, 1938, Jesusa San Miguel and Carlos Carasco were walking on a bridge in the town of Eagle Pass when appellant approached them from the opposite direction in a truck. The bridge was about fifteen feet wide. Jesusa and her companion were walking close to the rail, leaving ample room for the truck to have passed them. Instead of holding his truck to the right, appellant drove "on the left hand side of the bridge in the direction in which he was traveling." Jesusa and her companion were in plain view of appellant. It was a beautiful day and "light at that time." We quote from the testimony of Carasco: "When we got on the bridge the defendant was about twenty yards from the bridge and we was near to the rail of the bridge; we were in the middle of the bridge. We were walking down the

right side of the bridge going east; we were going toward home on the right hand side of the bridge; we were on the right side going east; going to the cemetery to the right. We were about four inches from the rail of the bridge, it was close. * * * When I first saw the defendant he was driving in a truck and nobody was with him. When I first observed there was danger the defendant was right up close to us in his truck. I thought there was danger because the truck was running toward us in a direct line toward us. When the truck struck Jesusa it was right against the railing and I jumped back and she had not time to get away. At the moment I observed that danger Jesusa was still in front of me. * * * She had no chance to get away. I jumped backwards and I fell into the creek. * * * When Jesusa was hit she was hanging from the rail; she did make an effort to get off of the bridge. She attempted to jump back but the truck was too close to her and she had no chance. I don't know what part of the truck hit her, but it hit her right below the knee and she was hanging from one of the railings of the bridge, and after that occurred the defendant kept on driving. He never did stop and he did not come back to help her."

The physician who attended Jesusa described her wounds as follows: "I will now describe the wounds I found on Jesusa San Miguel. She had a fracture of the tibia, which is the long bone, the large bone from the knee to the foot, with a fracture at the upper and middle third, which is a compound fracture; a compound fracture is a fracture where the soft tissues are torn loose from the bone; then there was a cut about one and a half inches long over her right knee. That is not the leg that was broken, it was the right knee that was cut; the left leg is the broken leg; then she had a few minor scratches but I don't remember just where they were. By a fracture I mean that the bone was broken. The flesh at the place was torn and lacerated for a distance of about five inches lengthwise and I would say three inches in width. In my opinion that was a serious injury to Jesusa San Miguel. Its an unusually serious injury, and that happened about the 28th day of February, 1938. Her condition at the present time is much improved, the bone is united but the soft tissues have not healed completely; by soft tissues I mean the muscles and skin 'fascia.' I have not allowed her to sit up in bed yet; she is still confined to her bed. When I viewed that wound on that afternoon I will state that she was badly in need of medical attention."

The proof was to the further effect that, traveling in the direction appellant was driving, the bridge could have been seen for a distance of three or four hundred feet before reaching it. Appellant's truck was examined shortly after the accident and found to bear evidence of having struck the rail of the bridge. An officer who went to the scene of the accident testified: "I did go over to the scene where it happened and I noticed that truck had come through there alright because I noticed some little pieces of loose boards on there on the bridge. I didn't bring the pieces and compare them with the truck but they were there. I found those pieces of loose board scattered right there on the bridge right about the middle and there was other pieces a little farther along, and I noticed where something had drug on the iron on the side of the bridge and that appeared to be flesh." The injury to appellant's truck was on the "rear left hand side," that is to say, on that side of the truck that struck Jesusa, and the rail of the bridge.

A witness for the State testified that he was about one hundred feet from the bridge in his place of business on the occasion of the accident. He said: "I was busy at the time counting out some cash and I heard the collision about the same time I saw the truck going at a high rate of speed across the street. No, I don't think I heard the first collision before it got to the bridge; at the time it got to the bridge I heard the impact. After the truck passed there I had already delivered my cash to the man that was waiting for it, I went outside and I saw some boy bringing this girl out of the arroyo, this girl, Jesusa San Miguel. At the time I first observed the truck it was going at a rapid rate of speed. I did observe the truck as it passed and it had a part of a fence and some boards hanging on the side of it. This impact that I heard was loud, at the time I heard it I was about one hundred feet away from it. I did hear the impact at that distance and it was loud to me. It happened around five o'clock in the evening."

The testimony of the State, as well as that of appellant, was to the effect that appellant was drunk at the time of the accident. A witness for the State testified that appellant came to his tavern about 5:30 p. m. on the occasion in question and remained there about fifteen minutes. The witness said: "I saw him in such state of drunkenness that I didn't think I ought to sell him any more." Also the testimony showed that appellant had drunk a quantity of wine and that shortly before

the accident he tore down a part of the fence at his home in driving away in his truck.

Appellant testified that he had been drinking wine during the day. We quote in part from his testimony, as follows: "When I took the wine home I drank out of the bottle and I kept on drinking and I commenced feeling that I was getting drunk about one o'clock. About one o'clock I realized that I was getting drunk but nobody made me or forced me to drink it. I drank that all of my own free will. After I realized I was getting drunk I kept on drinking the wine, and about five o'clock I decided to leave home and come to town. I do not remember if I tore down a part of the fence as I backed out of the gate, but I don't deny that I did that. I was very drunk at the time. I don't remember very well if it was about five o'clock but it was around five or five thirty. I don't know if I then drove to Cristoval De Leon's place. * * * I do not even remember having gotten in the truck. No, I don't remember crossing the railroad track. * * * I don't know where I parked my car when I got down town. I was entirely crazy. I do not deny that I hit Jesusa San Miguel. I now know that I hit her, but I don't know what I hit her with, but I know now I hit her with my truck, and that I hit her with my truck there on the bridge. I know that now. I know now that happened about five o'clock on the 28th of February, 1938, and I know now that I did not stop and render aid to Jesusa after she was struck by my truck." Further, appellant testified that he was "crazed with drink" at the time of the accident. He said: "I did not see Jesusa San Miguel on that trip. If I had seen Jesusa San Miguel on that bridge I would have stopped and picked her up and would have taken her to a hospital." Again, he testified: "I was almost unconsious, half crazy from the effects of the consumption of this liquor, and I didn't even know I got in my car and went from my residence down to De Leon's saloon."

Appellant sought to have the jury instructed as follows: "Unless you find from the evidence, beyond a reasonable doubt, that defendant, at the time of the alleged impact with Jesusa San Miguel, knew that such impact had occurred and that Jesusa San Miguel had been struck as alleged you will acquit the defendant." The court declined to give the requested charge, but submitted an instruction covering the provisions of Art. 36, P. C., which reads as follows: "Neither intoxication nor temporary insanity of mind produced by the voluntary recent use of ardent spirits shall constitute any excuse for the com-

mission of crime. Evidence of temporary insanity produced by such use of ardent spirits may be introduced by the defendant in mitigation of the penalty attached to the offense for which he is being tried. When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was brought about by the immoderate use of intoxicating liquor, the judge shall charge the jury in accordance with the provisions of this article."

The opinion is expressed that the requested instruction was properly refused. We think the testimony conclusively showed that if appellant had been sober he would have known that his truck had struck the injured party. In short, if there was an absence of knowledge of such fact it was due alone to appellant's intoxicated condition. We quote the language of Judge Hawkins in Clinton v. State, 104 S. W. (2d) 39, as follows:
"The special charge requested would have instructed the jury that if at the time appellant entered the store he was in such a state of intoxication as not to be able to form a rational intent to steal, he should be acquitted. The requested charge was refused, to which appellant reserved exception. In support of his claim the requested charge should have been given, appellant relies upon Loza v. State, 1 Tex. App. 488, 28 Am. Rep. 416, and Regan v. State, 28 Tex. App. 227, 12 S. W. 601, 19 Am. St. Rep. 833. The first case mentioned was decided prior to the enactment in 1881 of said article 36 of the Penal Code. The Reagan Case was decided in 1889. It is perhaps interesting to note that the same question was again before this court three times in 1892. The opinion in Lyle v. State, 31 Tex. Cr. R. 103, 19 S. W. 903, was written in June, 1892, by Judge Hurt, who also wrote in Reagan's Case, which was followed in Lyle v. State. In October, 1892, the case of Kelly v. State, 31 Tex. Cr. R. 216, 20 S. W. 357, was decided. In that case the trial court gave a charge in substance the same as that here requested. Judge Simpkins writing for the court expressed views not in accord with those found in the Reagan and Lyle Cases, supra. Judge Davidson concurred, but Judge Hurt at that time noted his disagreement. In December of the same year the question was again presented in Evers v. State, reported in 31 Tex. Cr. R. 318, 20 S. W. 744, 18 L. R. A. 421, 37 Am. St. Rep. 811. Judge Simpkins wrote for the court and gave the history which prompted the enactment of article 36, P. C. The Loza, Reagan, and Lyle Cases, supra, were overruled in effect on the point at issue, though not specifically named. All judges were present and concurred in the opinion

in the Evers Case. Whatever difference of opinion may have heretofore existed among the members of the court appears to have been settled by the Evers opinion. The following cases subsequently decided are direct authority supporting the trial court's refusal of the special charge, some of the cases being on almost identical facts as to the state of drunkeness of the accused as is here claimed by appellant, and the instruction refused was in substance the same as the charge here sought: See Doyle v. State, 59 Tex. Cr. R. 39, 126 S. W. 1131; Standenmire v. State, 58 Tex. Cr. R. 258, 125 S. W. 399; Carpenter v. State, 108 Tex. Cr. R. 291, 300 S. W. 83."

We disclaim any intention of holding that simply because one on trial for the offense in question might have been drunk when the collision occurred he could not interpose as a defense his absence of knowledge. The circumstances surrounding a collision in a given case might be such as that a sober man in the same situation would not have been aware of the impact But in cases like the one at bar, where absence of knowledge can be attributed alone to the intoxicated condition of the offender, the provisions of Art. 36, supra, would militate against the giving of the instruction sought by the appellant herein.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant complains because of the court's failure to charge the jury, in substance, that it was necessary to find that the appellant knew that he had struck the injured girl, at the time she received her injuries, before they could convict him of failing to stop and render aid to her. Usually this is a sound doctrine, but we do not think it is applicable in this case. Appellant himself testifies that he was "crazy drunk;" that besides some beer, he had drunk about a gallon of wine; that he did not know what he was doing, although it was broad daylight; that he did not see the injured party and her companion who were on this narrow bridge; that he had part of a fence hung on his truck at such time, and did not know that such fence was on his truck. Other witnesses testified that he was drunk immediately after this accident. It is apparent

that appellant's failure to know that he had struck the injured party, if such failure there was,—according to the whole testimony,—was on account of the fact that he was "crazy drunk," and, under the statute, such intoxication could not be used except in a possible mitigation of the punishment, and we find that the careful trial court gave an exhaustive charge thereon, embodying all the rights guaranteed him by the law under such circumstances. We think the trial court went as far as it was proper in thus embodying such defense as laid down by Art. 36 of the Penal Code.

We do not intend to hold herein that it is not necessary for a person to know that he has struck some one with an automobile before the duty arises to stop and render aid to such stricken person. What we do hold in this particular instance is that the testimony of the witnesses, including the appellant himself, is that he was drunk, and his defense was that he did not know what he was doing, and did not know he had struck the girl, and our holding is that his lack of knowledge having arisen because of his voluntary intoxication he can not now free himself of blame, but such intoxication can only be used in mitigation of the punishment, provided the jury see fit to mitigate the same, and not used for the purpose of showing lack of knowledge of the striking of the injured girl.

We notice that the trial court failed to carry out the provisions of the indeterminate sentence law in pronouncing sentence upon the appellant. Vernon's Ann. C. C. P., Art. 775. The sentence will therefore be reformed, and the appellant is thereby sentenced to serve a term in the State penitentiary of not less than one hour nor more than one year and one day, and with the sentence as thus reformed, after a careful re-examination of the record, this motion is overruled.

### ON SECOND MOTION FOR REHEARING.

HAWKINS, Judge.

The judgment was affirmed in an opinion delivered March 1, 1939. A motion for rehearing was overruled on May 24, 1939. Court adjourned for the term June 23, 1939, and its judgment had become final.

On July 20, 1939 there was lodged with the Clerk of this court appellant's second motion for rehearing. Under the following authorities said second motion may not be considered, it having been presented for filing after adjournment for the

term. McNess v. State, 121 Tex. Cr. R. 421, 52 S. W. (2d) 1049; Burleson v. State, 131 Tex. Cr. R. 76, 96 S. W. (2d) 785; Silver v. State, 110 Tex. Cr. R. 512, 8 S. W. (2d) 144; 9 S. W. (2d) 358; Hill v. State, 133 Tex. Cr. R. 92, 108 S. W. (2d) 912; Ralston v. State, 133 Tex. Cr. R. 100, 100 S. W. (2d) 185.

Appellant's request for leave to file second motion for rehearing is denied.