CHESTER DAVIS V. THE STATE.

No. 23509. Delivered December 18, 1946.
Rehearing Denied February 12, 1947.
Appellant's Motion to Correct Sentence Granted February 26, 1947.

*Ben J. Hagman and Borden M. Seaberry,* both of Weatherford, for appellant.

*Sam Cleveland,* District Attorney, of Stephenville, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was sentenced to two years in the penitentiary on a jury's verdict finding him guilty of failing to stop and render aid to a party whom he had injured by striking her with his automobile.

The accident occurred on the highway running west and near the edge of the town of Mineral Wells. The hour was late and appellant, with two men and a girl in his car, was travelling west. Two military policemen in a jeep had stopped on the north side of the road, their car facing east, and were talking to two soldiers and two girls. Appellant's car was observed as swaying from one side of the road to the other. As it approached the jeep it went off the road and around to the north of the jeep, striking the young lady who was described as being seriously injured. The car went on some distance and stopped in the middle of the highway. The engine was dead. The M.Ps. in the jeep whirled their car around and drove back to where appellant was stopped, and found him trying to start his car.

The evidence differs sharply as to what occurred at this point Appellant testified that he had stopped his car and insisted on going back to give aid to the party or parties whom he had injured. The M.P. testifying at the instance of the State contradicted this. He did say he had appellant under arrest and would not have let him drive away, but he denies that the appellant said anything about going back to render aid to the parties, and further states that if he had done so he would have gone back with him.

Appellant's brother-in-law, Jack Smethers, testified in his behalf but does not aid him in his contention that he was prevented from going back to render aid. He had been asleep and was awakened by the stopping of the car. He heard some M.P. tell him he could not go back, but did not know why, and apparently was too dazed to realize the situation. Thus an issue was drawn on appellant's defense which was fairly submitted to the jury and by them found against his contention.

Several bills of exception are in the record. The first brings forward appellant's motion for continuance which the court overruled. The ground for this continuance was the absence of Frank Strength, who was said to be in a hospital and unable to attend. The evidence which the motion asserts he would give is pertinent, but the court qualified the bill by attaching the affidavit of Frank Strength which the State presented in the contest of appellant's motion for a new trial. This affidavit is contrary to the allegations in the motion as to what he would testify, and makes his evidence harmful and not helpful to the appellant. The court overruled the motion for a new trial and we cannot say this was error.

Bills of Exception Nnumbers 2 and 3 raise no serious issue and will not be discussed.

Bill of Exception No. 4 complains of the conduct of the State in bringing Mary Louise Whitehead before the jury to exhibit her injuries. The court qualifies the bill by saying: "At the time the injured party was offered as a witness no objection was made to same." With this qualification the bill brings nothing for our consideration.

Bills of Exception 5, 6, 7, 8, and 9, are incomplete and will not be considered. In each bill a question is presented but the complete answer is not given, or, if given, it is in question and answer form. We are referred to some place in the record for

the matters complained about. Such bills have uniformly been held under our statute to be incomplete, and are not considered. Article 667, Vernon's Ann. C. C. P. Note 23, and authorities listed thereunder; Jones v. State, 154 S. W. (2d) 456; Rowe v. State, 179 S. W. (2d) 962.

Bill of Exception No. 10 complains of the opening argument of the County Attorney, which stated that the defendant lost control of his vehicle prior to reaching the parked jeep and the striking of the injured party. This is alleged to be contrary to the record. We are unable to say that it is. The evidence on the subject is not definite that he lost control before or immediately after the collision. He was entirely off the highway when the accident did. occur and admits that immediately thereafter his car was not under control, for which reason he could not stop it any closer. The argument probably presents a reasonable deduction from the evidence as presented to the jury.

Bill No. 11 complains of the argument of the District Attorney when he said: "That this defendant at the time of striking the injured party was full of beer." The evidence in the case as to how much beer the parties had been drinking may not warrant a conclusion as to the number of bottles consumed, but, considered with all of the circumstances, forms a reasonable basis for the argument. At least he was discussing the evidence in the case and that he had a right to do. Jack Smethers, the brother-in-law of appellant who was asleep with a girl in the back of the car at the time of the accident, had been with appellant during the day on a trip to Fort Worth. On their way they stopped at Mary's Creek and drank some beer, "one or two." They next stopped at the "Last Place", a beer joint. He did not remember whether they drank one or three, he did not keep a count. On their way back they stopped to eat at some place and drank a bottle of beer. They stopped at another place, back towards Mineral Wells, where he drank another bottle. They also stopped at Mary's Creek on their way back, but he does not remember how much he drank there. The appellant did not drink every time the witness did, but he drank some. Both the witness and appellant lived in Weatherford. They picked up a girl at one of these beer joints. On the round they picked up Frank Strength. They passed through Weatherford and went on to Mineral Wells. The witness went to sleep, on the way, and did not know what happened until the car stopped after the accident.

The M.P. testified to a case of beer, some of it empty bottles, in the car, and that appellant had been drinking.

Appellant himself testified that he was just driving around to entertain the two boys who had recently been discharged from the army, and had no particular place to go. It is our conclusion that this testimony before the jury warranted the argument complained of.

The case was submitted by proper charge in which the jury was instructed to acquit the defendant if they should find that he was prevented from offering to aid the injured parties by the action of the military police. This is the crux of the case and the jury found in favor of the state. The judgment is affirmed.

GRAVES, Judge.

In his motion for a rehearing appellant's attorney takes the position that although the trial court submitted to the jury appellant's defensive theory that he was immediately placed under restraint by the Military Police and by him prevented from going to the injured girl and offering aid, that, nevertheless, the jury could not have discarded this defense because the testimony was without conflict in that it shows that he was thus restrained and not allowed to return and offer aid to the injured girl.

We do not agree that there is no conflict in such testimony. The testimony of the Military Policeman shows that he was in his car facing the direction from which appellant was driving in an erratic manner; that the car was on the north side of the highway off the road; that the girl was north of this police car; that appellant drove still north of this car, struck the girl, careened across the road to his south and ran about 143 steps; that the policeman turned his car around and drove to where appellant's car was stopped on the highway and appellant was trying to start the engine of his car, turning the motor over in an effort to start the same. As the policeman walked up appellant said, "My car is torn up and won't start." He finally started his car and drove it to one side of the road. He then asked the policeman, "Do you want me to stay here?" The policeman said, "Yes." "He didn't ask if I was going to let him go up and give them aid or what; he just asked, 'Do you want me to stay here?'" "It is a fact that I told him not to go up there, but 'you stay here with this car', that is right. * * * I had him arrested, he couldn't run off, I wouldn't let him go off. Of course, not. * * * He didn't ask me if he wanted to give aid or anything. Nothing was said about giving aid or anything. Noth-

ing was said about giving aid, * * * but I asked him to stay with the car. * * * I kept Chester Davis there at the car until I turned him over to the city officers later, * * * about fifteen minutes, I would say." On cross-examination, the policeman testified:

"As to it being a fact that he started to the accident and that I asked him to stay with his car when he was going to the hurt people, I don't know where he was going; he was on the opposite side of the people that had gone on, out of the car."

Appellant's brother-in-law, who was asleep in the back of the car, testified that he was awakened when the car stopped, and "didn't hear Chester say one thing about what he was going to do, and I didn't hear Chester say one thing about going up there and helping anybody; as to my never hearing him mention anything about going back, I did not."

Appellant testified that after he struck this girl and several other people, his car got out of control and he ran into a ditch and finally got back on the road and turned off the iginition and stopped his car; that when the M.P. arrived, he (appellant) attempted to go back to where the injured people were and help them; that the policeman told him to stay there at the car; that the M.P. told him, "No use'n you going back up there." Appellant further testified: "As to my intending to go back and help those people, I would have if that M.P. had let me have gone." This policeman had previously testified that if appellant "had said anything about wanting to go back and assist the people, I would have permitted him to, and would have gone back up there with him." Under this condition of the testimony, the trial court charged the jury, among other things, as follows:

"Although you may believe from the evidence in this case, beyond a reasonable doubt, that the defendant collided with and caused injury to the person of Mary Louise Whitehead, at the time and place alleged in the indictment, yet you further believe that the defendant stopped his car as soon as he could and intended to go to the scene of the injury, but was detained by the Military Police from going to the scene of the injury, and would have done so, had it not been for the restraint, if any, by the Military Police, then he would not be guilty, and you will so find; or if you have a reasonable doubt thereof, then you will find the defendant not guilty."

We think that the court was correct in submitting this defense to the jury under the conflicting testimony here present. We do not think that the testimony is undisputed that appellant

was prevented from going to the aid of the injured parties by the policeman. In the first place, the State had sufficient proof that appellant not only did not stop, but was trying to start his car, possibly to pursue his erratic journey. It also has proof that he made no effort nor request to return to the place of the injury and offer aid, and if such request had been made, that same would have been granted. Although appellant had testimony to the contrary, the jury seemed to have disbelieved such contrary testimony. He waited, it seems, until he had traveled 143 steps from this collision until the M.P.'s car could turn around and come up with him while he was endeavoring to start his car before he got out thereof, and then only at the order of the policeman, and when ordered to stay with the car, he was out on a different side from the other parties who had been in the car and were going towards the scene of the accident.

We think the appellant's rights were fully protected by the charge above quoted, and therefore overrule the motion for a rehearing.

### APPELLANT'S MOTION TO CORRECT SENTENCE.

HAWKINS, Presiding Judge.

Judgment in this case was affirmed on December 18, 1946, and motion for rehearing overruled on February 12, 1947. In his motion filed February 19, 1947, appellant calls attention to an error of the trial court in applying the indeterminate sentence statute. (Art. 775 C. C. P.)

Punishment for the offense of failing to stop and render aid, (Art. 1150 P. C.) is imprisonment in the penitentiary "not to exceed five years, or in jail not exceeding one year, or by fine not exceeding five thousand dollars, or by both such fine and imprisonment."

In applying the indeterminate sentence statute the trial court directed appellant's imprisonment in the penitentiary to be not less than one year nor more than two years. It should have been for not less than one hour nor more than two years. Bevil v. State, 139 Tex. Cr. R. 513, 141 S. W. (2d) 362; Martinez v. State, 137 Tex. Cr. R. 434, 128 S. W. (2d) 398.

Appellant's motion to correct sentence is granted, and it is now ordered that the sentence be reformed and corrected to direct that appellant be confined in the penitentiary not less than one hour nor more than two years.