Joy ALLEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–96–01070–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 18, 1998.

**716**

J.C. Castillo, Houston, for appellant.

Kevin Patrick Yeary, Houston, for appellee.

1. The Honorable John Hill sitting by assignment.

Before FOWLER, EDELMAN and HILL, JJ.

## OPINION

JOHN HILL, [1] Justice.

Joy Michelle Allen appeals her conviction by a jury of the offense of failure to stop and render aid. The trial court assessed her punishment at five years in the Texas Department of Criminal Justice, Institutional Division, probated for five years, and a $500 fine. In three points of error she contends the trial court committed reversible error in failing to (1) grant her motion for instructed verdict of not guilty because the evidence is insufficient to show that she knew of the "apparent" injury to the complainant and because a medical doctor was immediately present at the scene to provide the needed medical assistance; (2) give her a requested charge on failure to stop and give information, which she urges is a lesser-included offense of failure to stop and render aid; and (3) give a requested charge on the defense of necessity because she fled the scene of the accident in fear of individuals chasing her.

We affirm. After reviewing the record, we hold the trial court did not err by (1) overruling her motion for instructed verdict because the evidence is sufficient to support her conviction; (2) failing to give the requested charge on the defense of necessity because she did not admit the commission of the offense; and (3) failing to give her a requested charge on failure to stop and give information because it is not a lesser-included offense of the offense of failure to stop and render aid.

## SUFFICIENCY OF THE EVIDENCE

■ In her second point of error, Allen contends the trial court erred in failing to grant her motion for instructed verdict of not guilty because the evidence is insufficient to show she knew of the "apparent" injury to the complainant and because a medical doctor was at the scene to provide the needed medical assistance. A challenge to the trial judge's ruling on a motion for an instructed verdict is, in actuality, a challenge to the

sufficiency of the evidence to support the conviction. *Cook v. State,* 858 S.W.2d 467, 470 (Tex.Crim.App.1993).

In determining the legal sufficiency of the evidence, we must determine, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Moreno v. State,* 755 S.W.2d 866 (Tex.Crim.App.1988).

The elements of the offense of failure to stop and render aid are (1) a driver of a vehicle (2) involved in an accident (3) resulting in injury or death of any person (4) intentionally and knowingly (5) fails to stop and render reasonable assistance. TEX.REV. CIV. STAT. ANN. art. 6701d, sec. 38(d) (Vernon 1977), repealed by Acts 1995, 74th Leg., ch. 165, sec. 24(a), eff. Sept. 1, 1995, *current version at* TEX. TRANS. CODE ANN., § 550,021 (Vernon Pamph. Part II 1997); *Sheridan v. State,* 950 S.W.2d 755, 759 (Tex.App.—Fort Worth 1997, no pet.).

### Evidence

*Mark Muellerweiss*

Mark Muellerweiss testified that he was turning right at the intersection of Gray and Waugh in Houston, Texas when he heard a thud. Earlier, he had observed a cyclist riding without lights in the fading light of day. After hearing the thud, Muellerweiss glanced in his rearview mirror and saw a cyclist bouncing off the grille of a Ford Bronco driven by Joy Allen. He watched the cyclist start to go over the driver's side of the hood, and the Bronco appeared to stop or hesitate. After the cyclist fell onto the pavement, Muellerweiss observed the Bronco take off, and, as it passed him, Muellerweiss saw sparks fly from under the Bronco as it dragged the bicycle beneath it. Muellerweiss further testified that, because his car had a canvas and vinyl top, he could hear the sound of the bicycle being dragged by the fleeing vehicle. Within five seconds of the accident, Muellerweiss and another vehicle pursued Allen and successfully stopped her about three or four blocks from the scene.

As an assistant city attorney, Muellerweiss has an ID that is a badge, but he does not remember pulling it out when he stopped Allen.

*Jennifer Martinez*

Jennifer Martinez testified that she saw the accident and observed the cyclist thrown in the air about ten or twelve feet, about twice as high as the Bronco. After the cyclist fell to the pavement, Martinez saw the Bronco speed up and then stop a little further down the road. While Martinez testified that she could not remember whether she heard the impact, she did state that she saw the incident clearly and that it was obvious the cyclist was hurt. Within seconds after the accident, Martinez saw a vehicle in pursuit of the Bronco.

*Meyer Kaplan*

Meyer Kaplan, a surgical resident at a Houston hospital, testified that, at the time of the accident, he was the first car at the light on the corner of Waugh and West Gray. After hearing a loud noise, he looked up to see the airborne cyclist hit the pavement. Kaplan said the cyclist appeared to be injured and was on the ground, holding his wrist. Kaplan stopped and asked the cyclist if he was all right. Upon receiving an affirmative answer, Kaplan joined in the chase after Allen. Kaplan could not remember whether Allen's vehicle paused after the accident, but he testified that she did not stop near the accident scene, she did not pull into the strip center adjacent to the scene of the accident, and she did not render the cyclist assistance of any kind. Kaplan said that Allen later told him she did not see the cyclist and that she was scared.

*Edward Arthur Smith, III*

Edward Arthur Smith III, the cyclist, testified that it was shortly after 8:00 p.m. and almost dark when the accident occurred At the time of the accident, Smith was wearing a multi-colored bicycling outfit of white, yellow, red, and some blue. Smith claimed that the intersection was well-lit, but admitted that his bike had no lights and was unsure whether it had any reflective decals. Smith testified that, when he is on his bicycle, he is usually on eye level with most drivers, and,

in this case, he was able to look over the hood of Allen's Bronco. Smith said that when the Bronco hit him the impact was high in the middle of the automobile's grille.

After the accident, Smith was lying on the ground with a broken pelvis, a broken arm, and extensive internal bleeding. He remembers the Bronco driver stopping for a second, then quickly accelerating past him. Medical assistance arrived in about five minutes.

*Joy Allen*

Allen testified that although she did not see a cyclist when she proceeded through the intersection, she did hear a thud. Allen did not see anything that she might have hit, nor did she know what caused the noise. A few seconds later, Allen saw Muellerweiss swerving his vehicle toward her and trying to run her off the road. Allen claimed that she did not know Muellerweiss nor did she know why he was trying to pull her over. She insisted that she was feeling threatened and frightened of being a victim of a crime, and that Muellerweiss's actions kept her from looking back at the intersection.

Allen testified that, when she left the scene, she was not going for assistance for the cyclist, but stopped as soon as she could without hitting another a vehicle. Allen denied being aware of dragging the bicycle under her vehicle because she had her air conditioner on and was playing her radio loudly. She testified that after she was stopped, an off-duty police officer told her to sit in his truck. At that time, she asked him if anyone had called an ambulance. She did acknowledge that she had imbibed a few ounces of wine cooler approximately one and one-half hours before the collision.

■ We find that the trial court did not err by overruling Allen's motion for instructed verdict. The evidence is legally sufficient to support her conviction for the offense of failure to stop and render aid.

Allen apparently claims that the evidence was insufficient to show that she knew of the "apparent" injury to the cyclist. She further claims the evidence was insufficient because a medical doctor was immediately present at the scene to provide the needed medical assistance. As previously noted, there was testimony that the collision with the cyclist created a noise that she and others could hear. The cyclist was thrown up in the air above the level of her hood. The bicycle was dragged under her vehicle for several blocks, creating sparks and causing a loud metal scraping noise. The evidence established that, after the collision, the cyclist was lying on the street, appeared to be injured, and in fact, suffered extensive injuries. From this evidence a rational jury could conclude Allen was aware that she had hit and probably injured the cyclist.

Allen argues that she did not know about the injured cyclist until she was stopped. The jury, however, could have reasonably determined that she knew the cyclist was injured at the time she hit him. Allen claims that Dr. Kaplan's testimony that the cyclist told him that he was O.K. proves the cyclist's injuries were not apparent. There was a great deal of evidence to the contrary, proving that, after the collision, the severely injured cyclist was either lying or sitting in the street. Several witnesses, including Dr. Kaplan, testified that the cyclist appeared to be injured. We find that Dr. Kaplan's brief conversation with the cyclist did not relieve Allen of her duty to stop and render reasonable assistance.

Allen relies upon several cases, including *Bowden v. State*, 361 S.W.2d 207, 208 (Tex. Crim.App.1962); *Williams v. State*, 102 S.W.2d 212, 214 (Tex.Crim.App.1937); *Powell v. State*, 170 Tex.Crim. 415, 341 S.W.2d 915, 916 (1961); and *Davis v. State*, 150 Tex.Crim. 124, 199 S.W.2d 155, 156 (1946). We find all of these cases to be distinguishable, except for *Davis*, which we find supports our decision.

In *Bowden*, the Court agreed that the evidence was insufficient to support a conviction for failure to render assistance following an automobile accident. In that case, the collision occurred at the home of the injured party and the defendant was aware that the victim's husband was taking her to the hospital. *See Bowden*, 361 S.W.2d at 208. In fact, the injured party's husband had instructed the defendant to remain at the scene until police officers arrived. *Id.* There, the Court noted that the defendant's car was disabled

and the nearest telephone available was two miles from the scene. *Id.* In the case at bar, there is evidence Allen left the scene without determining whether the cyclist was going to receive any medical assistance. Further, there is no evidence that her vehicle was disabled.

After the defendant in *Williams* hit a child, the defendant stood by while others took the child to the hospital. *See Williams,* 102 S.W.2d at 212, 213. The Court reversed, not on the basis that the evidence was insufficient to support the defendant's conviction, but because the jury instruction did not allow the jury to determine what assistance the defendant should have given the injured party from the standpoint of an ordinary person similarly situated as the accused. *Id.* at 213. The defendants in *Bowden* and *Williams* did not leave the scene and were aware that others had helped the injured party. *See Bowden,* 361 S.W.2d at 208;. *Williams* 102 S.W.2d at 212, 213.

In *Powell,* the defendant stopped at the scene and remained until an ambulance called by someone else removed the victims from the scene. *See Powell,* 341 S.W.2d at 916. The Court noted that the defendant's vehicle was disabled and reversed the defendant's conviction. *Id.* Allen's vehicle, however, was not disabled, and she did not remain at the scene to determine whether the victim had been cared for.

Finding some evidence of the defendant's guilt, the Court of Criminal Appeals in *Davis* affirmed the defendant's conviction for the offense of failure to stop and render aid. Davis was arrested by military police after they found him stopped in the roadway some distance from a hit and run scene. *See Davis,* 199 S.W.2d at 156, 158. At the time of his arrest, Davis did not ask the military police for the opportunity to go help. *See id.* We find the court's opinion in *Davis* to be supportive of our opinion here. We overrule point of error number two.

### LESSER INCLUDED OFFENSE

In her first point of error, Allen insists that the trial court committed reversible error by failing to give her the requested charge of failure to stop and give informa-tion, which she maintains is a lesser-included offense of failure to stop and render aid. We disagree.

It is an offense, following an accident resulting in injury or death of an individual or in damage to a vehicle, to fail to stop and render reasonable assistance to the person injured. It is also an offense to fail to stop and give certain specified information to the person struck. Tex.Rev.Civ. Stat. Ann. art. 6701d, § . 38, 40 (Vernon 1977), *repealed by* Acts 1995, 74th Leg., ch. 165, sec. 24(a), eff. Sept. 1, 1995, *current version at* Tex. Trans. Code Ann., §§ 550.021, 550.023 (Vernon Pamph. Part II 1997).

Article 37.09 of the Texas Code of Criminal Procedure provides that an offense is a lesser-included offense if (1) it is established by proof of the same or less than all of the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charge or an otherwise included offense. *See* Tex.Code Crim. Proc. Ann. Art. 37.09.

■ Failure to stop and give information does not meet any of these criteria with respect to the offense of failure to stop and render aid. Accordingly, we hold that failure to stop and give information is not a lesser-included offense of failure to stop and render aid.

Allen argues that failure to stop and give information meets the requirements of Article 37.09(1) because it is established by proof of the same or less than all of the facts required to establish the commission of the offense charged. The Texas Court of Criminal Appeals has held that, where evidence showing a completed aggravated assault is not part of the facts legally required to show burglary with intent to commit aggravated assault, aggravated assault is not a lesser-included offense of the burglary under Article 37.09(1). *See Jacob v. State,* 892 S.W.2d

905, 909 (Tex.Crim.App.1995). Here, the evidence shows a completed offense of failure to stop and give information is not part of the facts legally required to show failure to stop and render aid; therefore, it is not a lesser included offense under Article 37.09(1). *See* TEX.CODE CRIM. PROC. ANN. Art. 37.09. Allen's argument appears to be based upon a belief that failure to stop and give information is a lesser-included offense because it shares one or more elements in common with the offense of failure to stop and render information, that being a driver failing to stop after being involved in an accident. However, the sharing of one or more of the same elements is not listed in Article 37.09 as a basis for making an offense a lesser-included offense. Allen does not refer us to any case holding that it is, and we are not aware of any. We overrule point of error number one.

### NECESSITY

■ Allen urges in point of error number three that the trial court erred in failing to give her the requested charge of necessity. She bases this claim on her argument that she fled the scene in fear of individuals chasing her. Section 9.22 of the Texas Penal Code provides as follows:

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22.

■ This court has held that, in order to warrant a plea of justification based upon necessity, the appellant must specifically admit to the offense. *See Auston v. State,* 892 S.W.2d 141, 145 (Tex.App.—Houston [14th Dist.] 1994, no pet.). This includes admission of the culpable mental state. *See Klein v. State,* 662 S.W.2d 166, 170 (Tex.App.—Cor-

pus Christi 1983, no pet.). While Allen acknowledges leaving the scene without rendering aid to the cyclist, she claims she left because she did not know she had hit anyone. Allen did not admit to committing the offense; therefore, she may not maintain that she committed it out of necessity. We overrule point of error number three.

We affirm the judgment.