**Johnny Weldon CATES, II, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–99–01152–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 29, 2001.

Rehearing Overruled Jan. 24, 2002.

W. Troy McKinney, Houston, for appellant.

William J. Delmore, III, Houston, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and SEYMORE.

## OPINION

ANDERSON, Justice.

We withdraw the opinion issued October 11, 2001, and substitute the following opinion in its place. Appellant's motion for rehearing is overruled.

The State charged appellant, Johnny Weldon Cates, II, with the offense of failure to stop and render aid. Over his plea of not guilty, a jury found appellant guilty of the offense charged. In addition, the jury found that appellant used a deadly weapon in the commission of the offense. The jury assessed punishment at five years imprisonment in the Institutional Division of the Texas Department of Criminal Justice and assessed a $5,000 fine.

Appellant appeals his conviction in three points of error, contending the evidence was legally and factually insufficient to sustain a conviction, and the evidence was legally insufficient to sustain the jury's affirmative finding of a deadly weapon. We affirm.

## FACTUAL BACKGROUND

Because we find it critical to our analysis to fully develop the facts of the case, especially the time line, we review the testimony of the crucial witnesses in detail.

*Brent Tucker*

During the early morning hours of December 23, 1998, Brent Tucker lost control of his automobile while negotiating a curve and his vehicle burst into flames after striking a concrete culvert and a tree. Tucker helped extricate his passenger,

Brandon James Smith, from the burning vehicle. Tucker then left to find a telephone to summon assistance. He ran to Karen Mittelstedt's house but she did not have a phone, and then to a second house but no one answered. An unidentified party driving by stopped and offered her phone which did not work. Before he had an opportunity to continue his search, someone ran up to him and told him that Smith had just been struck by a truck. He ran back to the scene and found Smith lying in the road. Not more than a minute later, an officer arrived and placed him in the back seat of his cruiser. Tucker said that he thought Smith, who died from his injuries, had been struck sometime between 1:45 and 2:00 a.m.

*Claudia Wong*

Claudia Wong and her husband were night carriers for the *Houston Chronicle* newspaper. Shortly after 2:30 a.m., they were driving eastbound on Spring Cypress when a man on the road attempted to wave them down. They thought he was drunk and drove on. They then noticed Tucker's burning vehicle. They drove by the wreck, circled around and stopped along the shoulder of the road. Brandon Smith approached their car and attempted to speak with Mr. Wong who did not speak English. Claudia Wong said that Smith was upset about the accident. Smith then walked to the rear of their car. Wong lost sight of him but she heard the sound of a vehicle hitting Smith. She saw a dark-colored pickup truck pull away from the scene. The Wongs followed the truck, up to speeds of 85–90 miles per hour. Claudia Wong wrote down the license plate number of the pickup when it stopped at a traffic control light. The Wongs returned to the accident scene and gave the license number to a sheriff's deputy who arrived on the scene. Investigators determined that the license number provided by the Wongs was registered to the appellant and his address was just a few miles from the accident scene.

*Stacy Cullever*

Stacy Cullever was driving home from a friend's house that evening. She was driving westbound on Spring Cypress Road. She testified that she drove up on the accident scene between 2:00 and 2:30 a.m. She pulled over and spotted Smith among a group of people gathered along the side of the road. She got out of her car and approached as Smith began to cross the street. She noticed the headlights of an oncoming vehicle traveling eastbound on Spring Cypress toward Smith. She attempted to warn Smith before he was struck by the driver's side of the truck, thrown onto the hood and falling to the roadway. Subsequently, the truck veered off across the shoulder and onto the grass, she said. The driver slowed for a moment before returning to the roadway, leaving the scene without checking on Smith's condition. She ran up to Smith and instructed someone to pull their vehicle across the road to block other traffic. She then went back to her vehicle and left to find help. She spotted and passed a Sheriff's vehicle, circled around, and sped up behind the cruiser which was headed toward the accident.

*Karen Mittelstedt*

Defense witness Karen Mittelstedt lived on Spring Cypress. She testified that she saw Tucker's car on fire and that Tucker came to her home to use her phone. She saw the truck strike Smith, swerve off the road, slow down a little bit and take off. She also testified that she thought there were two people in the truck and that she heard one of them say "[g]o, go, go." She was never asked about the time she witnessed the collision.

*D.N. Harden*

Sheriff's Deputy D.N. Harden was driving westbound on Spring Cypress when he

noticed someone behind him flashing their headlights. Shortly thereafter, he arrived at the accident scene. The time was 2:48 a.m. Tucker's car was fully aflame. He called dispatch, reported the accident and called for the fire department. He said that someone claiming to be the owner of the vehicle approached him and told him that his passenger had been hit by a car. Harden approached and observed Smith, then walked back to his car and called for an ambulance. He placed Tucker in the back seat of his cruiser.

*David Hilborn*

David Hilborn was an accident investigator with the Sheriff's department. He received a dispatch at 2:49 a.m. to respond to an accident on Spring Cypress. He arrived at 2:58 a.m. He believed the accident occurred at 2:35 a.m. A witness gave him the license plate number of the vehicle that struck Smith. The vehicle belonged to Johnny Cates. He calculated the time to travel from the accident scene to Mark Nye's house, where appellant lived, to be no more than five minutes. He "cleared" the scene with dispatch at 4:35 a.m. but may have remained there a few minutes longer before arriving at appellant's residence at approximately 4:45 in the morning. He found a black Ford pickup parked on the street in front of appellant's residence. The truck's license plate matched the number recorded by the Wongs. He noticed the truck had visible damage, consistent with the collision under investigation, which included scuff marks and a shallow dent on the driver's side hood. Hilborn was met by the owner of the house Mark Nye. Appellant was one of four roommates at the time. Hilborn testified that appellant's eyes were bloodshot, his speech sluggish, and that he could smell alcohol from appellant. Hilborn asked appellant if he drove his vehicle and appellant stated that he drove home form a taxidermist shop that evening. When asked the route appellant drove to get home, appellant stated that he took Spring Cypress to Stuebner Airline to Klein Church Road. This route avoids the scene of the accident. The route, however, conflicts in that Stuebner Airline runs parallel to Klein Church Road and appellant needed to use the connecting street Louetta Road. Even so, this route still avoids the scene of the accident.

*Mark Nye*

Mark Nye was the owner of the home in which Johnny Cates lived. Nye testified he stayed home that night with his girlfriend watching movies. Around 2:00 a.m., Nye's girlfriend woke him and said that she was leaving. Cates' truck was parked behind her vehicle so Nye woke him from a sound sleep, asked for the keys, and moved the truck from the driveway to the street in front of the house. Nye testified he noticed a dent on the hood of the truck that he had not noticed before. Nye also testified he ran his hand over the dent because he thought the dent might be a shadow. He placed Cates' keys in Cates' work boots and placed them near the front door so Cates would find them in the morning. Within an hour after moving Cates' truck, Nye heard a knock on the door. Deputy Hilborn had arrived and asked for Cates. He woke Cates up again and told him that the Sheriff's Department was there to speak with him. On cross-examination, Nye admitted he did not know when appellant arrived at the residence that evening—nor did he know for sure when Deputy Hilborn arrived either. On the one hand, he testified that Cates' truck was in the driveway at 2 a.m. On the other hand, he testified that Deputy Hilborn arrived within the hour after moving Cates' truck and seeing his girlfriend off. Hilborn testified that he arrived after 4:45 a.m. Asked how Nye could fix the time at under an hour, Nye responded that

he had a habit of calling his girlfriend an hour after she would leave in order to make sure she made it to her home in Willis. He did not get a chance to make that call, however, because Deputy Hilborn arrived before the hour had passed.

*Jimmy Klenk*

Jimmy Klenk, a taxidermist, testified Cates came over to his house and met with him about some work Klenk was doing for Cates. He said Cates left around midnight.

*Johnny Cates*

Appellant testified he left work somewhere around 5:00 or 5:30 p.m., December 22. He had dinner at Papasito's. He then went to his friend Pam's house. He arrived at Jimmy Klenk's house at around 8:30—9:00 p.m. Klenk was his taxidermist. He left Klenk's house around midnight or a little after. He went home and went to sleep. During the night, Mark Nye asked for his keys. He didn't know the time. Nye left his truck keys in his work boots instead of returning them. Around 4:00—4:30 a.m., Nye returned and told him that the Sheriff's department was downstairs and wanted to speak with him.

*Gary Stallings*

Gary Stallings worked for the Texas Department of Public Safety. He examined the paint samples taken from Cates' truck and compared them with a pen-head-sized chip taken from the decedent. He determined that paint taken from Smith's clothing came from Cates' vehicle.

### I. Sufficiency of the Evidence

In his first two points of error appellant contends the evidence at trial was legally and factually insufficient to support his conviction for failing to stop and render aid. In particular, he asserts that the State failed to present legally and factually sufficient evidence that his truck was involved in the accident or that he was the driver at the time of the accident.

We apply different standards when reviewing the evidence for factual and legal sufficiency. When reviewing the legal sufficiency of the evidence, this court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979); *Garrett v. State,* 851 S.W.2d 853, 857 (Tex.Crim.App. 1993). This standard of review applies to cases involving both direct and circumstantial evidence. *King v. State,* 895 S.W.2d 701, 703 (Tex.Crim.App.1995). On appeal, this court does not reevaluate the weight and credibility of the evidence, but we consider only whether the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993).

When conducting a factual sufficiency review, we do not view the evidence in the light most favorable to the verdict. Instead, we view the evidence in a neutral light favoring neither party. *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). To do this, "[t]he court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). In reviewing the evidence weighed by the jury, a reviewing court may find that either the State's evidence was so weak as to be factually insufficient, or that the finding of guilt is against the great weight and preponderance of the available evidence to the extent the contrary finding is clearly wrong and manifestly unjust. *Id.* at 11. These are the two prongs of the factual sufficiency standard of review. A decision, however, is not manifestly unjust

because the jury resolved conflicting evidence in favor of the State. *Cain v. State,* 958 S.W.2d 404, 410 (Tex.Crim.App.1997). Since appellant proffered evidence contrary to the State's evidence, we will also apply the second prong of the *Johnson* sufficiency test, whether the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson,* 23 S.W.3d at 11.

### A. Legal Sufficiency

In his first point of error, appellant alleges that the evidence at trial was legally insufficient to support the jury's verdict in that the evidence failed to prove that appellant, rather than another person, committed the crime. Specifically, he argues that the State failed to prove that he was the driver. Elements of the offense of failing to stop and render aid are: (1) a driver of a vehicle; (2) involved in an accident; (3) resulting in injury or death of any person; (4) intentionally and knowingly; (5) fails to stop and render reasonable assistance. *Allen v. State,* 971 S.W.2d 715, 717 (Tex.App.—Houston [14th Dist.] 1998, no pet.); *see also* TEX. TRANS. CODE ANN. § 550.021 (Vernon 1999).

In a prosecution for failure to stop, give information, or render aid, the State bears the burden of proving beyond a reasonable doubt that the defendant was driving the car at the time the victim was struck. *Freeman v. State,* 118 Tex.Crim. 102, 40 S.W.2d 105, 106 (1931). Where there is no direct evidence that the defendant was driving the vehicle involved, ample circumstantial evidence can establish the defendant's guilt. *Clausen v. State,* 682 S.W.2d 328, 332 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd). Such evidence can take the form of: witness testimony; testimony by the vehicle's owner that the defendant had possession of the vehicle at the time of the accident; paint samples from the vehicle that matched those taken from the victim's clothing; and otherwise unexplained damage to the vehicle. *Id.*

Appellant only challenges the legal sufficiency of the evidence supporting the jury's finding, as part of its guilty verdict, that he was the driver of the truck that struck Smith. From the evidence produced at trial, we hold a rational jury could find, beyond a reasonable doubt, appellant was the driver of the vehicle that struck Smith during the early morning hours of December 23, 1998. Tucker testified the accident occurred between 1:45 and 2 a.m. Nye's house was only a short drive—approximately five minutes—from the crime scene. A rational jury could infer from Tucker's testimony that appellant was the driver of the truck that night because the pre–2:00 a.m. time would have permitted appellant to make it home in time for Nye to see the dent in the truck at approximately 2:00 a.m., and awaken appellant to obtain the keys to the truck.

Alternatively, Nye's testimony also suggests that he escorted his girlfriend to her car at approximately 4:00 a.m., because Officer Hilborn's arrival at Nye's home at 4:45 a.m. was within the hour after Nye had moved Cates' truck to allow the lady to depart. Thus, testimony in the record shows Nye was aware of Cates' presence no earlier than 4:00 a.m. The testimony of Wong, Cullever, Harden, and Hilborn is consistent as to the time of the offense, between 2:00 and 2:30 a.m., or a few minutes thereafter. A rational jury could infer from this evidence Cates was the driver of the truck because he had ample time to make the five minute drive from the accident scene to Nye's house and be sound asleep at 4:00 a.m. when Nye asked for the keys to the truck.

We hold, therefore, the evidence is legally sufficient to support the jury's finding appellant was the driver of the truck that

failed to stop and render aid after striking Smith. Accordingly, we overrule appellant's first point of error.

### B. Factual Sufficiency

In his second point of error, appellant claims that the evidence was factually insufficient to support the jury's verdict, in that the evidence does not prove that appellant, rather than another person, committed the crime. Again, where there is no direct evidence that the defendant was driving the vehicle involved, ample circumstantial evidence can establish the defendant's guilt. *Clausen,* 682, S.W.2d at 332. Circumstantial evidence directly proves a secondary fact which, by logical inference, demonstrates the ultimate fact to be proved. *Frazier v. State,* 576 S.W.2d 617, 619–20 (Tex.Crim.App.1978). Here, the ultimate fact to be proved was that Cates was driving his truck when it struck and killed Smith. There was no evidence that directly placed him behind the wheel of his truck at 2:35 a.m., December 23, 1998. We therefore review all of the evidence to determine whether evidence of appellant's guilt is against the great weight and preponderance of the available evidence. *Johnson,* 23 S.W.3d at 11.

Whether the evidence is factually sufficient to support the jury's verdict Cates was the driver of the truck that struck and killed Brandon Smith boiled down to one issue: resolution of conflicts in the testimony as to the time of the offense, and as to the time Nye became aware of Cates' presence at the house. The jury heard the following testimony on those two issues:

1. Nye initially testified he asked Cates for the keys around 2:00 a.m. so Nye could move Cates' truck (Nye's 2:00 a.m. testimony);
2. Nye also testified he was not certain the time was 2:00 a.m. The only time he was certain about was the interval between his girlfriend's departure and Deputy Hilborn arrival. That interval was less than one hour. Deputy Hilborn testified that he arrived at Cates' residence after 4:45 a.m. Nye's testimony implies he saw Cates' truck at approximately 4:00 a.m. (Nye's 4:00 a.m. testimony);
3. Cates testified he was home in bed between the hours of midnight and 2 a.m. He also testified he drove home that night past the exact location where the offense occurred; and
4. Tucker testified the time of the accident was 1:45 to 2:00 a.m., Wong, Cullever, Harden and Hilborn testified it was after 2 a.m.

The jury is the sole judge of the facts, the witnesses' credibility, and the weight to be given the evidence. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Therefore, the jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Beckham v. State,* 29 S.W.3d 148, 151 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd). Contradictions or conflicts between the witnesses' testimony do not destroy the sufficiency of the evidence; rather they relate to the weight of the evidence and the credibility the jury assigns to the witnesses. *Id.* The jury exclusively resolves conflicting testimony in the record. *Id.* at 152. A reviewing court may not substitute its conclusions for that of the jury, nor may it interfere with the jury's resolution of conflicts in the evidence. *Id.*

If the testimony of Cates and Nye's 2:00 a.m. testimony are considered together, a rational jury could infer, in light of witness testimony, that the offense occurred in the 2:00 to 2:30 a.m. period and that Cates was not the driver of the truck that struck Smith. However, as we have noted, Tuck-

er's testimony about the time of the offense, at or before 2:00 a.m., contradicts the other witnesses to the offense, and it does not exclude Cates as the driver since he would have had time to return home and get in bed before Nye asked for the keys at 2:00 a.m. Thus, here, the evidence of Cates' guilt is not so against the great weight and preponderance of contrary evidence as to be manifestly wrong and unjust.

Alternatively, if the testimony of Cates is considered with Nye's 4:00 a.m. testimony, and the testimony of Wong, Cullever, Harden, and Hilborn regarding the time of the offense—between 2:00 and 2:30 a.m., or a few minutes thereafter—a rational jury could infer Cates was the driver because he had time to return home and be asleep when Nye asked him for the keys to the truck. Here also the evidence of guilt is not so against the great weight and preponderance of contrary evidence as to be manifestly wrong and unjust. Simply stated, in neither instance is the circumstantial evidence supporting Cates' guilt greatly outweighed by contrary proof.

A reviewing court must always remain cognizant of the fact finder's role and unique position, a position the reviewing court is unable to occupy. *Johnson*, 23 S.W.3d at 9. The authority granted in *Clewis* to disagree with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice. *Id.* Otherwise, due deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence. *Id.*

Where as here, the appellant presents evidence contrary to that put on by the State, that appellant is allowed to argue that his evidence greatly outweighed the State's evidence to the extent that the contrary finding (guilty verdict) is clearly wrong and manifestly unjust. *Id.* at 11. According the appropriate degree of deference to the jury's resolution of conflicts in the testimony, we hold the evidence of guilt in this case is factually sufficient in that it is not greatly outweighed by Cates's evidence to the extent that the guilty verdict is so clearly wrong as to warrant disagreement with the jury in order to arrest the occurrence of a manifest injustice. Therefore, we overrule appellant's second point of error.

### II. Use of a Deadly Weapon

In his third point of error, appellant contends the evidence was legally insufficient to establish use of a deadly weapon, namely a vehicle, during commission of the offense of failure to stop and render aid. We disagree.

The elements of the offense of failure to stop and render aid are: (1) a driver of a vehicle (2) involved in an accident (3) resulting in injury or death of any person (4) intentionally and knowingly (5) fails to stop and render reasonable assistance. Tex. Trans. Code Ann. § 550.021, *et seq.* (Vernon 1999); *Allen v. State*, 971 S.W.2d 715, 717 (Tex.App.—Houston [14th Dist.] 1998, no pet.). A deadly weapon is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or *anything that in the manner of use or intended use is capable of causing death or serious bodily injury.*" Tex. Pen.Code Ann. § 1.07(a)(17) (Vernon 2000). The gravamen of failure to stop and render aid in the instant case is leaving the scene of a fatal accident. Therefore, the essential question is whether appellant, *while leaving the scene of the accident*, operated the vehicle in a manner capable of causing serious injury or death. The State bore the burden of proving the vehicle was actually capable of causing

death or serious bodily injury *in the manner of its use or intended use.* In *Sheridan v. State,* 950 S.W.2d 755, 759 (Tex. App.—Fort Worth 1997, no pet.), the defendant struck and injured the occupant of a van with his vehicle. After the impact, the defendant left the scene on foot. The defendant was charged with failure to stop and render aid. The State argued that the defendant's use of his pickup truck in connection with the accident resulting in injury supports the jury's finding that the defendant used a deadly weapon in connection with the offense of failure to stop and render aid. The *Sheridan* court dismissed this argument and found that the defendant did not use a deadly weapon to facilitate failure to stop and render reasonable assistance. Here, however, the driver of the hit and run vehicle in the instant case chose to leave the accident scene in his truck. The decision to leave the scene forms the basis of culpable conduct, failing to stop and render aid. The offense is an act of "omission". *Hill v. State,* 913 S.W.2d 581, 589 (Tex.Crim.App.1996). However, appellant's manner of operating the truck while leaving the scene was an affirmative act. *See id.* at 583. Witness Claudia Wong and her husband followed the truck after the fatal impact. She testified they drove at speeds ranging from 85–90 miles per hour while they were chasing the truck.

Our inquiry pertinent to appellant's legal sufficiency challenge is whether the evidence is legally sufficient to establish his vehicle, in the manner of its use while leaving the scene of the accident, was actually capable of causing death or serious bodily injury. To make this determination, we view the evidence in the light most favorable to the verdict and decide whether a rational trier of fact could have found the manner in which appellant used his vehicle while leaving the accident scene, rendered the vehicle capable of causing death or serious bodily injury. *See Wilson v. State,* 7 S.W.3d 136, 141 (Tex.Crim.App.1999). We accord great deference to the responsibility of the trier of fact to fairly weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts. *See Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). We presume any conflicting inferences from the evidence were resolved by the jury in favor of the prosecution, and we defer to that resolution. *Flores v. State,* 33 S.W.3d 907, 923 (Tex.App.—Houston [14th Dist.] 2000, pet ref'd) (quoting *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Here, the jury could rationally infer from the testimony of Claudia Wong, that appellant's vehicle was being driven at a speed approximating the speed the Wongs used to catch appellant, a use rendering appellant's vehicle capable of causing death or serious bodily injury during the commission of the offense—leaving the scene of an accident. Accordingly, we overrule appellant's third point of error.

We affirm the judgment of the trial court.

HUDSON, J., dissenting.

HUDSON, Justice, dissenting.

Because I believe the State failed to offer any evidence to support the jury's affirmative finding of the use or exhibition of a deadly weapon, I respectfully dissent.

While a motor vehicle is not a deadly weapon per se, it is well established that a motor vehicle may, by its manner of use, be a deadly weapon. *Tyra v. State,* 897 S.W.2d 796, 798 (Tex.Crim.App.1995). Examples of such use include: (1) driving a

vehicle while intoxicated;[1] (2) intentionally attempting to run over a pedestrian;[2] (3) attempting to throw off the owner of a stolen Porsche, who was clinging to the spoiler, by rapidly accelerating and braking the vehicle;[3] (4) intentionally crushing a person's legs by pinning them between two cars;[4] and (5) intentionally attempting to run over a police officer who was trying to subdue the defendant.[5] Of course, the mere act of driving always creates the *potential* for death or serious bodily injury, but it does not automatically render a motor vehicle a deadly weapon. In each of the examples above, the motor vehicle was transformed into a deadly weapon by some specific use that heightened the risk of injury to other persons.

Here, the accident occurred while the victim was standing in a roadway, late at night, just beyond a turn in a dark road. As appellant emerged from the turn, he struck and killed the victim. While tragic, not every fatal traffic accident is a criminal homicide, and the State did not seek to prove that appellant was criminally responsible for the victim's death. Appellant was prosecuted solely for failing to stop and render aid to the victim.

Thus, if appellant used or exhibited a deadly weapon, the State was obliged to show appellant did so while *leaving* the scene of the accident. I can find no evidence in the record suggesting appellant drove his vehicle in a reckless manner before or after the accident. Claudia Wong testified that appellant's vehicle struck the victim, slowed as if to stop, then, after a moment's hesitation, left the scene. Ms. Wong and her husband turned around and pursued appellant. Although Ms. Wong testified that she was nervous because her husband was driving 85 to 90 miles per hour, there is no evidence that *appellant* was driving at such speeds. In fact, Ms. Wong testified the "chase" was concluded quickly and they were able to get the vehicle's license number while appellant was stopped at a traffic signal. Thus, Ms. Wong's testimony suggests the speed of appellant's vehicle was less, perhaps significantly less, than the speed of her pursuing vehicle.

Finally, the accident occurred in the early morning hours, and Ms. Wong testified there were no other vehicles on the roadway. The State had the burden of proving beyond a reasonable doubt that appellant used or intended to use his motor vehicle in a manner capable of causing death or serious bodily injury. The standard in reviewing the legal sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Webb v. State,* 801 S.W.2d 529, 530 (Tex.Crim.App.1990). Here, the State offered no testimony that appellant was driving recklessly when he left the scene or that his conduct presented an unreasonable danger to others. Without such evidence, the jury could not rationally conclude that appellant used or exhibited a deadly weapon in the commission of the offense. Thus, I would reform

1. *Walker v. State,* 872 S.W.2d 34, 36 (Tex. App.—Fort Worth 1994), *aff'd,* 897 S.W.2d 812 (Tex.Crim.App.1995).

2. *Green v. State,* 831 S.W.2d 89, 93 (Tex. App.—Corpus Christi 1992, no pet.).

3. *Morgan v. State,* 775 S.W.2d 403, 406 (Tex. App.—Houston [14th Dist.] 1989, no pet.).

4. *Parrish v. State,* 647 S.W.2d 8, 11 (Tex. App.—Houston [14th Dist.] 1982, no pet.).

5. *St. Clair v. State,* 26 S.W.3d 89, 95 (Tex. App.—Waco 2000, pet. ref'd).

the judgment to delete the affirmative finding.