Affirmed and Opinion filed January 30, 2003









Affirmed and Opinion filed January 30, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS.
14-01-01137-CR

   and 14-01-01138-CR

____________

 

MICHAEL LYNN MARK, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 



 

On
Appeal from the 208th District Court

Harris County, Texas

Trial
Court Cause Nos. 849,832 and 849,831

 



 

O
P I N I O N

In
separate indictments, appellant, Michael Lynn Mark, was charged with two counts
of aggravated sexual assault of a child. 
See Tex.
Pen. Code Ann. ' 22.021(a)(1)(B)(I), (iii), & (2)(B)  (Vernon Supp. 2003). In a consolidated trial, the jury found appellant guilty of
both counts and assessed punishment, for each offense, at confinement for 15
years in the Institutional Division of the Texas Department of Criminal
Justice.  The trial court ordered the
sentences to run consecutively.  We
affirm.








FACTUAL
BACKGROUND

The
complainant, D.S. was a ten-year-old girl at the time of the offense.  In April of 2000, D.S.=s
cousin, Maurice Lacy, noticed the complainant, D.S., was moping.  Lacy asked D.S. what was wrong and D.S. began
crying.  Lacy told D.S.=s
mother, Addreannia, who then took D.S. to another room to talk to her.  D.S. told her mother that appellant, who was
previously Addreannia=s boyfriend, used to come into D.S.=s
bedroom at night and kiss her Aprivate parts@ and touch her Abehind@ and her Anasty.@ D.S. said appellant had done this three or four times over a
period of months.  D.S. could not tell
her mother an exact date but said it was happening around the time Addreannia=s
brother died, which was in September 1999. 
After talking to D.S., Addreannia called the police.  Addreannia and D.S. went to the Children=s
Assessment Center where D.S. gave a videotaped statement and was examined by a
doctor.

D.S.
testified at trial that appellant would enter her room at night and touch her
vagina with his hand.  She also testified
that appellant=s Aprivacy part@ touched her vagina and that he touched her Aprivate
part@
with his tongue. 

Appellant
denied the allegations, testifying he never touched D.S. inappropriately.  He testified he was in jail from October 1
until November 19, 1999.  He also
testified, after being released from jail, 
he worked nights loading trucks at a warehouse in Lufkin, a two and a
half hour drive from Houston.  Appellant,
however, admitted there were nights he did not work at the warehouse and also
testified he had been at the residence of D.S. and her mother around Christmas
of 1999, which is within the time period the assaults allegedly occurred. 

This
court=s
cause number 14-01-01137-CR involves the charge for assault in which appellant
was alleged to have touched D.S.=s vagina with his mouth, and cause number 14-01-01138-CR
involves the charge for assault in which appellant was alleged to have touched
D.S.=s
vagina with his finger.








DISCUSSION

I.  Motion for New Trial:  Ineffective Assistance of Counsel

In
his first point of error in both appellate causes, appellant contends the trial
court Aerred@
in not conducting a hearing to determine whether he was receiving effective
assistance of counsel.  He alleges his
trial counsel failed to present critical evidence of the complainant=s
motive to lie.  We review the denial of a
hearing on a motion under an abuse of discretion standard.  See Reyes v. State, 849 S.W.2d 812,
816 (Tex. Crim. App. 1993).

Appellant
initially raised the issue of counsel=s assistance in a pro se pretrial motion requesting
dismissal of his appointed counsel. 
Appellant alleged counsel had Ataken no affirmative [sic], to present evidence that is crucial
to defendants [sic] cause,@ and counsel had Arepeatedly made contradictions on how he was going to prepare a
defense, and disregards defendants [sic] questions.@  The motion did not specify the evidence at
issue.

In
a pro se motion for new trial, appellant alleged the trial court Aerred
in failing to grant either in whole or part the Defendants [sic] Motion to
Dismiss Court Appointed Counsel J.C. Carroll@ and further alleged the court erred Ain
refusing to admit into evidence reasons and motives that were crucial in
leading to said charges against the defendant.@  The motion for new
trial did not specify any reasons supporting counsel=s
dismissal.[1]  The motion for new trial was overruled by
operation of law.  See Tex. R. App. P. 21.8(c).








There
is no indication appellant presented either motion to the trial court.  A defendant must present his  motion for new trial to the trial court
within 10 days of filing it, unless the trial court in its discretion permits
it to be presented and heard within 75 days from the date when the court
imposes or suspends sentence in open court. 
Tex. R. App. P. 21.6.  A defendant is not entitled to a hearing on a
motion for a new trial when he fails to bring the motion to the attention of
the trial court.  Gumpert v. State,
48 S.W.3d 450, 458 (Tex. App.CTexarkana 2001, pet. ref=d) (citing Carranza v. State, 960 S.W.2d 76, 80 (Tex.
Crim. App.1998)), cert. denied, 122 S. Ct. 1933 (2002).[2]

In
neither motion did appellant request a hearing. 
A defendant must request a hearing in order to be entitled to a
hearing.  Gallegos v. State, 76
S.W.3d 224, 228 (Tex. App.CDallas 2002, pet. ref=d); Brooks v. State, 894 S.W.2d 843, 847 (Tex. App.CTyler
1995, no pet.). 

Finally,
appellant never specified the evidence supporting his claim that the
complainant had a motive to lie, and he did not provide an affidavit in support
of his motion for new trial.[3]  When a court 
cannot determine the issue raised from the record, a defendant must
support his motion for a new trial with an affidavit showing the truth of the
grounds of attack.  Reyes v. State,
849 S.W.2d at 816.  A[T]he
motion for new trial or affidavit must reflect that reasonable grounds exist
for holding that such relief could be granted.@  Id.  See also Melancon v. State, 66 S.W.3d
375, 379B80
(Tex. App.CHouston [14th Dist.] 2001, pet. ref=d)
(concluding defendant did not show prejudice absent record of facts witness
could have provided had counsel subpoenaed her).

We
overrule appellant=s first point of error in both causes.








II.  Admission of Extraneous Offense Evidence

The
AExtraneous Offense@ Evidence in Question


In
his second and third points of error in both causes, appellant contends the
trial court Acommitted reversible error@ in admitting Addreannia=s testimony about appellant=s assaulting her. 
Appellant points to the following testimony, in which Addreannia
described physical altercations she had with appellant:

Q.        [By the
prosecutor] We had talked a little bit before the break about your daughter
saying that she had been afraid to tell you the things that had been
happening.  Do you recall that?

A.        [by
Addreannia] Yes, ma=am.

Q.       Was there anything that happened in your
home when Mr. Mark lived with you that would have made [D.S.] afraid?

A.        Yes, there was.

Q.       Can you tell the jury what kind of things
she would have seen?

A.        [D.S.] had seen me and Michael get into
arguments and a pushing and shoving match, and she had seen him hold me down
and push me and threaten me.

Q.       Was it physical between both of you?  Did it go in both directions?

A.        Yes, it was.

.
. .

Q.       Were there occasions when your daughter
actually saw Mr. Mark doing physical harm to you?

A.        Yes, she saw the door get kicked in.

Q.       Explain what you mean by that?

A.        The back door got kicked in and one
bedroom door also had been kicked in.

Q.       Could you give the jury some sort of a
time frame that you=re talking
about here?

A.        At the time this happenedCit
happened after my brother=s death.

. . .








Q.       Did that happen the same month that your
brother died or before or after?  I=m
confused.

A.        It was a little after my brother died.

Q.       So what month are we talking about?

A.        September of >99.

Q.       How long did this period of time last
when things were kind of physical between the two of you?  Was it an off and on thing?

A.        It was arguing every other day.

Q.       What about the holding and pushing and
shoving?

A.        It wasn=t
frequently, but it was a lot of cussing and a lot of arguing.

Q.       And [D.S.] saw all of this?

A.        Saw and heard.

Q.       Specifically, can you pin down the
September date that you=re referring
to?

A.        I don=t
know if I can pin down the date, but it was at the time of my brother=s
death, and everybody was going through hard times.

D.S.
did not report the sexual assaults until several months after they allegedly
occurred.  When previously questioned by
her mother about inappropriate touching, D.S. had indicated nothing happened.

In
its offer of proof, the State justified Addreannia=s
testimony as validating D.S.=s fear that appellant might hurt D.S. or Addreannia if D.S.
told anyone of the incident.[4]
Appellant responded by objecting:

I would have some objection.  We don=t have a
time frame as it relates to the indictment. 
We also have extraneouses [sic] that are talked about and the issue has
not been raised to allow those extraneous offenses to come in.  They do not relate to the issue at hand and
that=s whether or not he sexually assaulted this little
girl.  Since we don=t have a time frame, it could be any time after the
incident or before the incident.  I don=t know.








My objection is that it would be not admissible
because no issues have been raised to allow it to come in.  There has been no proper time frame laid out,
and it does not relate to anything regarding the facts of this case at hand,
which is whether the child was molested or not.

 

Arguments
on Appeal

Rule 404(b) argument.  In his second point of error in both causes,
appellant complains the evidence was irrelevant and inadmissible under Texas
Rule of Evidence 404(b), which provides in relevant part:  AEvidence of other crimes, wrongs or acts is not admissible to
prove the character of a person in order to show action in conformity
therewith.  It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.@  Tex.
R. Evid. 404(b).[5]  Extraneous offense evidence is admissible if
the proponent persuades the trial court the extraneous evidence (1) tends to
establish some elemental fact, such as identity or intent; (2) it tends to
establish some evidentiary fact, such as motive, opportunity or preparation,
leading inferentially to an elemental fact; (3) it rebuts a defensive theory by
showing, e.g. absence of mistake or accident or (4) it is relevant to a
logical inference not anticipated by the rulemakers.  Santellan v. State, 939 S.W.2d 155,
168B69
(Tex. Crim. App. 1997).  Thus, the list
set forth in Rule 404(b) is neither mutually exclusive nor collectively
exhaustive.  See Pondexter v. State,
942 S.W.2d 577, 583B84 (Tex. Crim. App. 1996). 

It
is the trial court=s task to determine whether extraneous offense evidence is
relevant for a non‑propensity, or nonconformity, purpose.  Ransom v. State, 920 S.W.2d 288, 300
(Tex. Crim. App. 1994).  We defer to the
trial court=s ruling and reverse only for an abuse of discretion.  Id.








Before
the trial court admitted the extraneous offense testimony, Addreannia had
testified when D.S. told her about the assault, D.S. was Ascared
because she thought someone would be hurt if she told me what went on.@  Addreannia also testified D.S. had told her
appellant would kill Addreannia if D.S. told Addreannia what happened and
Addreannia would go to jail for letting it happen.  Immediately before the State=s
offer, the State elicited the following testimony:

Q.       [By the Prosecutor] Did the two of you
before that day ever have a conversation about people touching and what was
appropriate or not?

A.        [By Addreannia] Yes.

Q.       On that day what did she say?

A.        On that day I spoke to [D.S.] and she
told me nothing had happened.

Q.       Did you talk to her on April 23rd and ask
her why she said that?

A.        Yes, I did.

Q.       What did she say?

A.        She was scared.  She said that she was scared to tell because
he said that I was going to go to jail and he was going to kill me.[6]

 

In
closing, the State argued:

It=s true we talked about the fact that her mom asked her
about it before and she said nothing was happening.  Why? 
Because she was scared.  We talked
on voir dire about why a child may not tell. 
We know she should have not been afraid, but kids are kids.  They=re
afraid of the boogie man and the dark and things other kids are scared of.

Remember this guy is a big guy.  You saw how little [D.S.] was.  The child had seen the pushing and shoving in
the house.  She had seen some violence in
the house.  She saw him kick a door in, a
back door and a bedroom door.  There was
a reason for this child to be afraid of this man and he took advantage of her
fears.








She said that he told her that her mom would be sent
to jail.  That=s taking the one person you love the most, the person
that takes care of you, and threatening to send them away.  That=s very
intimidating to a child.  It=s reasonable then that the child was afraid to say
something until the point where he=s gone.

 

The
extraneous offense evidence was relevant to a non-propensity or nonconformity
purpose, i.e., why D.S. did not make a prompt outcry.  See Brown v. State, 657 S.W.2d 117,
119 (Tex. Crim. App. 1983); Wilson v. State, 90 S.W.3d 391, 394 (Tex.
App.CDallas
2002, no pet.). [7]  The trial court did not abuse its discretion
in admitting the extraneous offense evidence over appellant=s
Rule 404(b) objection.

We
overrule appellant=s second point of error in both causes.

Rule 403 argument.  In his third point of error, appellant
contends the evidence was inadmissible under Texas Rule of Evidence Rule 403
because the prejudicial effect of the evidence substantially outweighed its
probative value.[8]  Appellant=s objection, set forth in its entirety above, referred only to
time frame and Aextraneous offenses@ that did Anot relate to the issue at hand.@  Appellant did not
request the court to perform the Rule 403 balancing.








Appellant=s
objection that the evidence constituted Aextraneous offenses@ did not constitute an objection under Rule 403.  See Norrid v. State, 925 S.W.2d 342,
348 (Tex. App.CFort Worth 1996, no pet.) (stating there was no Rule 403
objection when appellant=s objection was only, AIt=s an extraneous matter which has nothing to do with this case@).  After the trial court overruled appellant=s
Rule 404(b) objection, appellant was required to make further objection under
Rule 403 in order to preserve this complaint. 
Nelson v. State, 864 S.W.2d 496, 499 (Tex. Crim. App. 1993).  He did not do so.

Even
were we to conclude appellant preserved his claim of error under Texas Rule of
Evidence 403, the factors we apply to the 403 balancing test weigh in favor of
admitting the testimony.  These factors
include (1) how compellingly the extraneous offense evidence made a fact of
consequence more or less probable; (2) the potential the extraneous offense
evidence had of impressing the jury Ain some irrational but nevertheless indelible way;@
(3) the time the State needed to develop the evidence, during which the jury
would be distracted from consideration of the indicted offense; and (4) the
force of the State=s need for this evidence to prove a fact of consequence, i.e.,
did the State have other probative evidence available to it to help establish
this fact, and is this fact related to an issue in dispute.  See Wyatt v. State, 23 S.W.3d 18, 26
(Tex. Crim. App. 2000).

First,
in the present case, the fact D.S. saw appellant kick down two doors and attack
Addreannia explained D.S.=s potential fear of appellant. 
It also explained D.S.=s initial denial of the assaults and her delay in ultimately
reporting, making the physical assaults relevant to D.S.=s
credibility in a case that turned largely on credibility.  Second, because the assault in question
(involving D.S.=s mother) was not a sexual assault and did not involve a young
victim, the jury was less likely to use the evidence as propensity
evidence.  The jury was also given a
limiting instruction at the close of evidence. 
Third, the testimony occupies less than three pages in the transcript of
a two day trial.  Fourth, although
Addreannia testified D.S. told her appellant had threatened D.S., D.S.
testified only that she was afraid but did not explain why.  Evidence she had observed appellant=s
violent outbursts and assaults on her mother explained D.S.=s
fear and reticence to report appellant=s sexual assaults on her.

We
overrule appellant=s third point of error in both causes.








III.  Sufficiency of the Evidence

Introduction
and Standards of Review

In
his fourth through seventh points of error in cause number 14-01-01137-CR and
his fourth and fifth points of error in cause number 14-01-01138-CR, appellant
challenges the legal and factual sufficiency of the evidence.  We apply different standards when reviewing
the evidence for legal and factual sufficiency. 
When reviewing the legal sufficiency of the evidence, this court must
view the evidence in the light most favorable to the prosecution and determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Garrett v.
State, 851 S.W.2d 853, 857 (Tex. Crim. App. 1993).  This standard of review applies to cases
involving both direct and circumstantial evidence.  King v. State, 895 S.W.2d 701, 703 (Tex.
Crim. App. 1995).  On appeal, this court
does not reevaluate the weight and credibility of the evidence, but we consider
only whether the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993).








To
determine factual sufficiency, we view the evidence in a neutral light and set
aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).  We must review the evidence weighed by the
jury tending to prove the existence of the elemental fact in dispute, and compare
it to the evidence tending to disprove that fact.  Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).  To reverse on the
ground of factual insufficiency, we therefore must determine either (1) the
State=s
evidence was so weak as to be factually insufficient, or (2) the finding of
guilt is against the great weight and preponderance of the available evidence (i.e.,
that the defendant=s evidence so greatly outweighs the State=s
evidence, the verdict is clearly wrong and manifestly unjust).  See id. at 11.  These are the two prongs of the factual
sufficiency standard of review.  See
Cates v. State, 66 S.W.3d 404, 409 (Tex. App.CHouston [14th Dist.] 2001, pet. granted).  Under the second, alternative sufficiency
prong, when the defendant proffers contrary evidence, we consider whether the
proof of guilt, although adequate if taken alone, is greatly outweighed by
defendant=s contrary proof.  Johnson,
23 S.W.3d at 11.  We may disagree with
the jury=s
decision, even if probative evidence exists that supports the verdict.  Jones v. State, 944 S.W.2d 642, 647 (Tex.
Crim. App. 1996).  However, a factual
sufficiency review must be appropriately deferential to avoid substituting our
judgment for the fact finder=s.  Id. at
648.  We are not free to reweigh the
evidence, but must exercise our fact jurisdiction only to prevent a manifestly
unjust result.  Id. (citing Clewis,
922 S.W.2d at 135).

Appellant=s
Challenges to the Sufficiency of the Evidence

Legal sufficiency: complainant=s
credibility.  In appellant=s fourth point of error in both causes, he does not challenge
the legal sufficiency of the evidence supporting any element of the charged
offenses.  Instead, he contends the
evidence was Alegally@ insufficient solely 
because the evidence of the offense came only through the complainant=s
testimony; it was not corroborated by medical or physical evidence, and thus
the complainant was not credible.  The
evidence is legally sufficient, however, so long as the evidence provides the
requisite proof needed to satisfy the elements of the offense charged.  Bousquet v. State, 47 S.W.3d 131, 137
(Tex. App.CHouston [1st Dist.] 2001, pet. ref=d)
(noting same when dismissing claim of appellant who argued complainant=s
videotaped testimony was not credible, and, because no other proof of alleged
offense was offered, evidence against him was legally insufficient).  Even when the victim is a child, the victim=s
testimony alone is sufficient to support a conviction for sexual assault.  Jensen v. State, 66 S.W.3d 528, 534
(Tex. App.CHouston [14th Dist.] 2002, pet. filed).

We
overrule appellant=s fourth point of error in both causes.








Legal sufficiency: nature of alleged conduct in cause number
14-01-01137-CR.  In cause number 14-01-01137-CR, the State was
required to prove appellant Aintentionally or knowingly . . . cause[d] the sexual organ of a
child to contact or penetrate the mouth, anus, or sexual organ of another
person, including the actor,@ and the victim was younger than fourteen years of age.  Tex.
Pen. Code Ann. ' 22.021(a)(1)(A)(iii) & (2)(B) (Vernon Supp. 2002).[9]  In his sixth point of error in this cause,
appellant argues the evidence was legally insufficient to establish appellant
caused the complainant=s sexual organ to contact appellant=s
mouth as specifically alleged in the indictment.  See Roberts v. State, 513 S.W.2d 870,
871 (Tex. Crim. App. 1974) (stating all essential averments in indictment must
be proved as alleged); Boyette v. State, 632 S.W.2d 915, 917 (Tex. App.CHouston
[14th Dist.] 1982, pet ref=d) (stating same).  

Appellant
argues, because D.S. referred to appellant=s tongue touching her Aprivate part,@ the State did
not present sufficient evidence to prove beyond a reasonable doubt that
appellant=s mouth contacted D.S.=s sexual organ, as alleged.  Appellant claims D.S.=s
reference to appellant=s tongue instead of his mouth, and her Aprivate
part@
instead of her vagina, provide legally insufficient evidence for a jury to find
that appellant=s mouth had contacted D.S.=s vagina.  Appellant=s
argument is without merit.

In
Johnson v. State, however, the court concluded that, in drafting the
criminal statute for aggravated assault, the legislature intended the word Amouth@
to include the tongue.  882 S.W.2d 39, 41
(Tex. App.CHouston [1st Dist.] 1994, pet. ref=d)
(quoting Montoya v. State, 841 S.W.2d 419, 422 (Tex. App.CDallas
1992), vacated on other grounds, 906 S.W.2d 528 (Tex. Crim. App.1995)).[10]  Similarly, we conclude D.S.=s
reference to appellant=s tongue was legally sufficient to establish appellant caused
his mouth to touch D.S.=s sexual organ.








The
Johnson court also held that, when the complainant had referred to her Aprivate
part@
and the complainant=s mother had testified that complainant used the phrase Aprivate
part@
to mean her vagina, the evidence was sufficient to show appellant had contacted
the complainant=s sexual organ.  Johnson,
882 S.W.3d at 41.  In the present case,
D.S. testified that appellant=s tongue had contacted her Aprivate part.@  The complainant=s
mother testified to what the complainant meant when she referred to her Anasty@
and  Aprivate part@:

Q.       [by the Prosecutor] Where, if anywhere,
did she say that [appellant] would touch her?

A.        [by Addreannia]  She said [appellant] would kiss her private
part and touch her on her behind and her nasty.

Q.       What=s
her nasty?

A.        Her private part,
her vagina.

As
stated earlier, conflicts in evidence are for the jury to resolve.  Upton v. State, 853 S.W.2d 548, 552
(Tex. Crim. App. 1993).  Additionally,
child victims are not expected to testify with the same clarity and ability
that is expected of adults.  Villalon
v. State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).

D.S.=s
testimony, taken as a whole, is quite clear. 
The prosecutor asked D.S.: AWas there ever a time when anybody ever put their mouth on your
private part?@  D.S. answered AYes.@  When asked who did that, she answered that
Michael Mark did.  When asked how
appellant Awould put his mouth on [her] private part,@  D.S. replied A[h]e=d touch it with his tongue.@  We hold the evidence was
legally sufficient to establish appellant caused his mouth to contact D.S.=s
sexual organ, as required by the language of the statute and the indictment.

We
overrule appellant=s sixth point of error in cause number 14-01-01137-CR.








Factual sufficiency.  In his fifth points of error in both causes,
appellant argues the evidence was factually insufficient because the
complainant was not credible.  In his
seventh point of error in cause number 14-01-01137-CR,
appellant argues the evidence was factually insufficient for the same reasons
set forth in his sixth point of error in that cause. We begin our factual
sufficiency review in light of our conclusion the evidence was legally
sufficient in both causes.[11]  Because appellant proffered exculpatory
evidence, we examine the record to determine whether the evidence supporting
the finding of guilt is so greatly outweighed by the defendant=s
evidence to the extent that the verdict is clearly wrong and manifestly unjust.  See Johnson, 23 S.W.3d at 11.

D.S.
testified that appellant would come into her room at night and, while she was
pretending to still be asleep, he would Astart to touch@ her.  Regarding the
digital contact, the prosecutor then asked:

Q.       [by the Prosecutor] Where would he touch
you?

A.        [by D.S.] On my vagina.

Q.       What did he touch you with on your vagina?

A.        His hand.

Q.       Would his hand touch you on the outside
part of your vagina or the inside?

A.        Outside.

Q.       Would he ever go on to the inside?

A.        No.

Q.       Did his hand stay still or move?

A.        It moved.

Q.       Would [sic] did it move to?

A.        It would move around.

Q.       Back and forth?

A.        Back and forth.

Q.       So when you say it moved back and forth,
would it ever go a little bit inside your vagina?








A.        Yes.

Q.       A second ago you said it didn=t
I want to make sure you understand. 
Which one is right?

A.        Sometimes it would go in and sometimes
it didn=t.

 

D.S. later testified when
appellant=s finger
touched her on the outside or inside, it Ahurted.@  Regarding the oral contact, the prosecutor
questioned:

 

Q.       [by the Prosecutor] What about was there
ever a time when anybody ever put their mouth on your private part?

A.        [by D.S.] Yes.

Q.       Who did that?

A.      Michael
Mark.

 

D.S.=s
testimony was consistent with her outcry to her mother, Addreannia, and with
her statement to Dr. Sheela Lahoti, who examined D.S. at the Children=s
Assessment Center.  Appellant, however,
argues D.S. was not credible because (1) she testified appellant left physical
evidence of the assault, but no physical evidence was preserved and presented
at trial and (2) appellant presented alibi testimony.

Appellant
refers to D.S.=s testimony that appellant left yellow and white moisture on
her stomach and vagina.  He then
complains that this evidence was not seen by anyone else or preserved, the State
did not corroborate D.S.=s allegations with scientific evidence, and D.S.=s
outcry was suspicious because she had just seen a film on sexual development.

D.S.,
however, waited to make an outcry until after she and her mother had moved to a
place appellant could not find themCseveral months after the assaults allegedly occurred.  Preservation of the evidence about which D.S.
testified was unlikely.  In addition, Dr.
Lahoti, a physician at the Children=s Assessment Center, testified when a child tells her she was
manually touched in the vaginal area, Lahoti expects to see a normal examination.  The lack of physical evidence does not render
the evidence factually insufficient to support the guilty verdict.








Appellant=s
alibi evidence does not vitiate the sufficiency of the evidence.  The State alleged the assaults occurred on or
about December 1, 1999, but did not have to prove an exact date.  D.S. told her mother the assaults occurred
over a period of several months and were occurring as early as when Addreannia=s
brother died in September of 1999.  D.S.
testified the assaults occurred at night.

Appellant
testified that he was in jail in Harris County from October 1 to
November 19, 1999.  Appellant also
testified that, after his release, he immediately returned to Lufkin, a two and
a half hour drive from the residence of D.S. and her mother.  In Lufkin, appellant worked nights at a
warehouse.  Appellant introduced work records,
consisting of time cards from Express Personnel Services, showing he worked the
following dates:  November 23, 25, 26,
28, 29B30,
December 1B3, and 5B10. The next time card in the record is for April 25,
2000.  On cross-examination, the State
elicited the following testimony:

Q.       [by the Prosecutor]  You said that on Christmas of 1999 you did
spend that Christmas with [D.S. and her mother]; is that correct?

A.        [by Appellant] Yes.

Q.       So if [D.S.] said that you were there on
Christmas, that=s true, isn=t
it?

A.        Yes, I was there for Christmas.

 

In
response to questions about appellant=s work records, appellant acknowledged he occasionally had days
off:

Q.       [by the Prosecutor] Well, I=m
looking at the 24th and it says off. 
Also Saturday the 27th of November it says off.

A.        [by Appellant] We were off on that day
because of the Thanksgiving holiday.

Q.       So you didn=t
work every day?

A.        No, not seven days a week.

Q.       That=s
my point.  Then you worked a few days at
the end of November and than had a day off?

A.        Yes.








Q.       Then on Friday the 12th, excuse me.  On Friday the 10th of December, that was the
last day you worked for them in that year?

A.        Yes.

Q.       In fact, you didn=t
work for Express in Lufkin until April of 2000?

A.        Yes.

Q.       Certainly it=s
not out of the realm of possibility that on a day off you pretty much could go
anywhere you wanted to; would that be accurate?

A.        Yes.

 

After
reviewing the evidence in a neutral light, we cannot conclude that the State=s
evidence, although adequate if taken alone, is so greatly outweighed by the
defendant=s evidence, so as to render the verdict clearly wrong and
manifestly unjust.  See Johnson,
23 S.W.3d at 11.  We therefore conclude
the evidence was factually sufficient to support the jury=s
verdict.

We
overrule appellant=s fifth point of error in both causes and his seventh point of
error in cause number 14-01-01137-CR.

We
affirm the judgments of the trial court.

 

 

 

/s/        John S. Anderson

Justice

 

 

 

 

Judgment rendered and Opinion filed
January 30, 2003.

Panel consists of Justices Yates,
Anderson, and Frost.

Do Not Publish C
Tex. R. App. P. 47.2(b).











[1]  In addition,
during the prosecutor=s closing argument, appellant interrupted, stating, AI had reason that there was a motive for [the
complainant] to lie.  My attorney failed
to give it.  He failed.  He misled the people.  He failed to submit my evidence.  He lied to me.  He said he was going to bring it up.@





[2]  Both judgments
were rendered October 3, 2001, and the trial court appointed appellate counsel
on October 10, 2001.  Although appellant
filed a pro se motion for new trial and a pro se notice of
appeal, he is not contending he was denied assistance of counsel during the
critical time period for filing a motion for new trial.  Cf. Prudhomme v. State, 28
S.W.3d 114, 120 (Tex. App.CTexarkana 2000, no pet.) (concluding presumption trial
counsel continued to effectively represent defendant during time for filing
motion for new trial was rebutted by (1) filing of pro se motion for new
trial in which defendant complained of ineffective assistance of counsel, no
hearing was requested on motion, and defendant did not present it to court, (2)
filing of pro se notice of appeal and (3) filing of pro se motion
to substitute counsel).





[3]  When asked by
the prosecutor why D.S. would fabricate her allegations, appellant did not
immediately answer, and the prosecutor moved to a different line of
questioning.





[4]  The offenses
allegedly occurred on or around December 1, 1999.  D.S. did not make outcry until April 28,
2000, approximately one month after Addreannia had moved so appellant could not
find her.





[5]  The rule also
requires the State, upon a timely request, 
to provide advance notice of its intent to use such evidence.  Tex. R. Evid. 404(b).
Appellant does not challenge the adequacy of the State=s notice in the present case.





[6]  D.S.
subsequently testified she had not told someone immediately because she was
scared.  She also testified she did not
know what she was scared of, but was scared for her family.  She stated appellant had told her not to tell
but did not say what would happen if she told.





[7]  Other states
also have allowed extraneous offense evidence to explain the victim=s delay in reporting. 
See, e.g., State v. Holley,
799 So.2d 578, 584 (La. Ct. App. 2001) (concluding evidence of defendant=s
physical abuse of sexual abuse victim relevant to victim=s
delay in reporting); State v. Egger, 601 N.W.2d 785, 791B92
(Neb. Ct. App. 1999) (concluding evidence of defendant=s
physical violence toward sexual abuse victim and victim=s
family relevant to victim=s delay in
reporting); State v. Berry, 803 A.2d 593, 596 (N.H. 2002) (concluding
evidence of defendant=s physical
abuse of sexual abuse victim relevant to victim=s
delay in reporting); State v. Bynum, 433 S.E.2d 778, 780B81
(N.C. Ct. App. 1993) (defendant=s
threat to kill victim in unrelated incident relevant to show delay in reporting
sexual offense at issue).





[8]  AAlthough relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence.@  Tex. R. Evid. 403.  





[9]  It is
undisputed D.S. was ten years old at time the offenses allegedly occurred.  See Tex. Pen. Code Ann. '
22.021(a)(2)(B) (Vernon Supp. 2003).





[10]  In Johnson,
the court was considering whether the indictment stated an offense when  it alleged appellant caused the complainant=s sexual organ to contact appellant=s tongue.  Johnson
v. State, 882 S.W.2d 39, 41 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref=d).





[11]  The elements
the State was required to prove in cause number 14-01-01137-CR, are set forth
above under the discussion of the legal sufficiency of the evidence to support
the nature of the contact in that cause. 
In cause number 14-01-01138-CR, the State was required to prove:  appellant (1) intentionally or knowingly, (2)
caused the penetration of the anus or female sexual organ of a child by any
means; and (3) that the complainant was younger than fourteen years of
age.  See Tex. Pen. Code Ann. '
22.021(a)(1)(B)(I) and (a)(2)(B)  (Vernon
Supp. 2003).  In the indictment, the
State alleged appellant placed his finger in D.S.=s female
sexual organ.