NUMBERS 13-06-476-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MELISSA MAREZ, Appellant,

 

v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 36th District Court of San Patricio County, Texas

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Justice Garza


 A jury convicted appellant, Melissa Marez, of failure to stop and render assistance,
assessed punishment at three years' imprisonment, and imposed a $5,000 fine. See Tex.
Transp. Code Ann. §§ 550.021, 550.023 (Vernon 1999). By five issues, appellant
challenges her conviction, contending: (1) the evidence is legally and factually insufficient
to support her conviction, (2) the trial court erred in allowing the State to suggest that
appellant was intoxicated, (3) the State's jury argument was improper and warrants a new
trial, (4) the jury rushed to judgment, and (5) she received ineffective assistance of counsel. 
We affirm.

I. Factual and Procedural Background

 On December 16, 2005, appellant was driving a friend's pick-up truck on the frontage
road of I-37 toward Mathis, Texas. As she was driving, appellant missed the ramp onto the
freeway because it was a dark and rainy night and she could not see very well. While she
was driving, appellant heard a "thump" and knew she hit something. 

 Earlier that evening, George Mendoza and his wife attended a party where he
consumed alcohol. (1) As Mendoza and his wife were driving home, they argued because he
insisted on driving. Medoza's wife refused to let him drive because she did not think he was
sober enough to drive. Mendoza got out of the car and decided to walk home. When
Mendoza's wife got home, she called her daughter, Bianca, and asked her to go look for her
father because he refused to ride home with her. 

 Bianca and her husband, Christopher, searched for Mendoza in the area where he
got off the car. They ultimately found Mendoza walking along County Road 234. Mendoza
refused to get into their vehicle. He crossed over I-37 twice, requiring Bianca and
Christopher to drive around and re-locate him each time. It was difficult to locate Mendoza
because it was drizzling and dark. Bianca and Christopher continued their attempts to get
Mendoza into their vehicle for about thirty to forty-five minutes. When Mendoza crossed I-37 the second time, Bianca and Christopher were able to spot him when they saw
headlights coming from behind him. They were about to get out of their vehicle to again try
to convince him to go with them, but he was struck by a Dodge pick-up truck. After striking
Mendoza, the vehicle swerved for a few seconds and then continued driving. Mendoza was
killed instantly.

 DPS troopers were called to the scene to investigate. Appellant's vehicle was
located a short time later a few miles from the scene. There was significant front end
damage and a large part of the windshield was cracked and had hair in it. 

 Dispatcher Emily Garcia received a call between 11:00 and 11:30 from a female
identifying herself as "Lisa" asking for a tow truck. "Lisa" said water was leaking from the
front of the vehicle, which she identified to be a Dodge pick-up truck. "Lisa" said a friend
was driving the truck. She identified the owner of the vehicle as Merardo Hernandez. 
Garcia arranged for "Lisa" to meet tow truck driver, Abel Trejo, at a local Quick Pantry
convenience store. Garcia notified one of the deputies about the call. "Lisa" was later
identified as being appellant.

 As appellant and Trejo were discussing payment arrangements, Trooper Manning
arrived. Manning read appellant her Miranda warnings and videotaped their conversation. 
When she asked why she needed to have her rights read to her, Manning responded, "you'll
understand it better in a minute." Appellant told Manning her friend called her to have the
vehicle towed because it overheated. Manning told appellant that "He ran over somebody
and killed them." Appellant said, "Excuse me? Oh, my God. No." Manning agreed
appellant was "surprised" and in shock; however, appellant told him she was not driving the
vehicle.

 The following day, appellant went to the police department and confessed that she
was the driver of the pick-up truck. Melissa stated:

I didn't know. I never saw him. They said the man that was hit was hit head-on, but it wasn't. It was something off to the side, and I thought it was a
marker. It was foggy and - but in the back of my head that is what I was
thinking. I heard a thump. I heard a thump, and I didn't stop. I was by
myself, and I go what the heck was it. I was afraid to stop on the side
because I was scared. I was by myself.


 Appellant claimed she did not see the damage to her windshield until lights shined
through; prior to that it was so dark she could not tell the window was broken. Appellant
further claimed she continued driving because she thought she had hit a road marker or a
tire. 

II. Legal and Factual Sufficiency


 In her first issue, appellant claims the evidence is legally and factually insufficient to
support her conviction for failure to stop and render assistance. See Tex. Transp. Code
Ann. §§ 550.021, 550.023. Specifically, appellant argues that the evidence is insufficient
to prove that she knew an accident had occurred or that a person had been injured. 

a. Standard of Review


 In assessing the legal sufficiency of the evidence to support a criminal conviction, 
we consider all the evidence, whether properly or improperly admitted, in the light most
favorable to the verdict and determine whether, based on that evidence and reasonable
inferences therefrom, a rational juror could have found the essential elements of the crime
beyond a reasonable doubt. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)
(citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Powell v. State, 194 S.W.3d 503,
506 (Tex. Crim. App. 2006); Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). 
The reviewing court must give deference to "the responsibility of the trier of fact to fairly
resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences
from basic facts to ultimate facts." Id. (citing Jackson, 443 U.S. at 318-19).

 In a factual sufficiency review, we view the evidence in a neutral light and ask
whether a jury was rationally justified in finding guilt beyond a reasonable doubt. See
Watson v. State, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). We then determine
whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and preponderance of
the conflicting evidence. Id. at 415. We will not reverse a case on a factual sufficiency
challenge unless we can say, with some objective basis in the record, that the great weight
and preponderance of the evidence contradicts the jury's verdict. Id. at 417.

 Under both legal and factual sufficiency standards, the fact-finder is the exclusive
judge of the witnesses' credibility and the weight to be given to their testimony. See
Swearingen, 101 S.W.3d at 97; Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App.
1997). The jury is in the best position to evaluate the credibility of the witnesses, and our
factual-sufficiency jurisprudence still requires an appellate court to afford "due deference"
to the jury's determinations. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App.
2006). Although the reviewing court is permitted "to substitute its judgment for the jury's"
when considering credibility and weight determinations, it may do so only "to a very limited
degree." Marshall, 210 S.W.3d at 625 (citing Watson, 204 S.W.3d at 417).

 Sufficiency of the evidence is measured by the elements of the offense as defined
by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997). 



b. Applicable Law


 A person commits the offense of failure to stop and render aid if (1) a driver of a
vehicle (2) involved in an accident (3) resulting in injury or death of any person (4)
intentionally and knowingly (5) fails to stop. Tex. Transp. Code Ann. §§ 550.021, 550.023;
Goss v. State, 582 S.W.2d 782, 785 (Tex. Crim. App. 1979); Goar v. State, 68 S.W.3d 269,
272 (Tex. App.-Houston [14th Dist.] 2002, no pet.); Allen v. State, 971 S.W.2d 715, 717
(Tex. App.-Houston [14th Dist.] 1998, no pet.). 

 Before an accused may be held culpable for failing to stop and render aid, he or she
must have knowledge that an accident occurred. Goss, 582 S.W.2d at 785. Thus, the
culpable mental state for failure to stop and render aid is proven by showing that "the
accused had knowledge of the circumstances surrounding his conduct," meaning the
accused had knowledge that an accident occurred. Id.; Goar, 68 S.W.3d at 272; Baker v.
State, 974 S.W.2d 750, 750 (Tex. App.-San Antonio, 1998, pet. ref'd). Intent or knowledge
may be inferred from the acts, words, and conduct of an accused at the time of an offense. 
Hart v. State, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). 

 Further, there is no requirement that an accused must have positive, subjective
knowledge of the nature or extent of injury resulting from the collision. McCowan v. State,
192 S.W.3d 158, 162 (Tex. App.-Fort Worth 2006, pet. ref'd). The court in McCowan
stated: 

Such a prerequisite would defeat the public interest, which is served by
requiring drivers involved in collisions to stop, provide specified information,
and render assistance if necessary. Instead, constructive knowledge of the
resulting injury is sufficient. In other words, the knowledge requirement of
section 550.023 is satisfied if an objective examination of the facts show that
it would be apparent to a reasonable person that someone has been injured
in an accident and is in need of reasonable assistance. 


Id. at 163. Thus, if a collision occurs under circumstances that a reasonable person would
or should have anticipated would result in injury to another person, knowledge of that fact
is imputed to the driver. Id. (citing Goar, 68 S.W.3d at 272). 

c. Analysis

 

 At trial, appellant testified that she heard a "thump" and knew she had hit something. 
She claimed she did not know what she had hit. Appellant explained that she did not stop
because she thought she had hit a marker or a tire, but asserted that, had she known she
struck a person, she would have stopped. Appellant testified that the truck continued to
operate normally after she hit the object. However, as she drove North about seven miles,
the lights on the truck started blinking. She went over to a bar to look "for help or maybe
just to see what happened in the front because at that time [appellant] could see a hump." 
Once appellant "got to the lights" she saw a crack in the windshield. And, although
appellant claimed she never looked at the front of the truck, she testified she was able to
see, from inside the vehicle, the "smoke coming out of [the truck] and the hump." In
addition, appellant testified that she did in fact call a dispatcher to obtain a tow truck and
that she gave the name "Lisa" because her family and ex-boyfriend sometimes call her by
that name. She further testified that she did not tell Manning that she was the driver of the
truck. Appellant claimed that she did not see Mendoza on the road, but that she did hear
a noise. Appellant further testified that when she first saw the damage to the truck during
the daytime, she "was shocked. I was - - there was a lot of damage, and I couldn't
understand why I hadn't seen it, or I couldn't believe that a person could do that. I didn't - -
I didn't - - it was too much damage. (2) We note that the significant damage to the vehicle
should have made it apparent to appellant that someone may have been injured and was
in need of reasonable assistance. See McCown, 192 S.W.3d at 162-63; Goar, 68 S.W.3d
at 272. 

 On cross-examination, appellant testified that she lied to Manning because she was
scared after having been told a person was killed. (3) She testified that she could not see "but
that was only for a little bit only where [appellant] missed the 37 [ramp]." Appellant also
stated that she was driving, with her head lights, looking forward, and paying attention to
where she was driving. However, she claimed she did not see Mendoza because she may
have been changing the defrost or the "hot and cold." She again testified she heard a
"thump" but could not tell whether it was a loud thump or a soft thump because she had the
radio on. Appellant explained, "[t]he thump that I heard was not - - would - - what the
damage of the truck looked like." She also admitted that she speculated as to what she hit
because she did not know what the sound was. Appellant further testified that she had to
call a tow truck because she knew she had hit something and because there was smoke
coming out of the truck and she could not drive it anymore. On cross, appellant again
admitted that she lied about who was driving the truck before she had even been informed
by Manning that someone had died. Most important and relevant to the determination of
the issue before us, appellant stated that she lied because "it was an accident. The bottom
line is because I had an accident period. The truck did not belong to me; not because I ever
saw the person; just because I panicked that there was an accident period."

 Appellant's testimony alone demonstrates that she knew she had been involved in
an accident. In addition, the testimony of Bianca and Christopher that the truck swerved
several times as if trying to regain control after hitting Mendoza combined with appellant's
testimony that she heard a "thump" is sufficient to prove appellant's knowledge of the
accident. See Allen, 971 S.W.2d at 718. 

 Viewing the above evidence in the light most favorable to the verdict, we conclude
a rational jury could have concluded beyond a reasonable doubt that appellant knew that
an accident had occurred. See Hooper, 214 S.W.3d at 13. Further, given appellant's
testimony that she heard a "thump" and testimony of Bianca and Christopher that Mendoza
was struck by the truck and was visibly injured, not breathing and possibly "dead on impact,"
we conclude that a rational jury could have concluded beyond a reasonable doubt that
appellant knew that Mendoza had been injured. See Allen, 971 S.W.2d at 718 (finding a
rational jury could determine appellant "knew of the 'apparent' injury to the cyclist" based
on testimony that appellant and others heard the collision and that the cyclist was visibly
injured after the collision). In addition, based on appellant's testimony that she did not stop
because she thought she hit a marker or tire, the jury could have concluded that her failure
to stop was intentional and knowing. See id. Thus, the evidence is legally sufficient to
support appellant's conviction for failure to stop and render aid.

 Moreover, we conclude that the facts in this case that render the evidence legally
sufficient also render the evidence factually sufficient. After reviewing the evidence
neutrally, we do not find that the proof of guilt is greatly outweighed by evidence to the
contrary, nor is it so weak as to undermine confidence in the jury's determination. Thus, we
further conclude that the evidence was factually sufficient to support appellant's conviction.

 Accordingly, we overrule appellant's first issue.


III. Evidence of Intoxication


 In her second issue, appellant claims the State improperly proffered-but could not
prove-that appellant had either been drinking or had taken drugs before the accident,
and/or that she had alcohol or something else illicit in her vehicle, and that this is why she
left the scene of the accident. Appellant claims the complained-of evidence was admitted
in violation of Texas Rule of Evidence 403, because its probative value was substantially
outweighed by the danger of unfair prejudice. The State contends appellant failed to
preserve the issue for review. We agree. 

 To preserve a complaint for appellate review, a party must present a timely request,
objection, or motion to the trial court stating the specific grounds for the desired ruling if the
specific grounds are not apparent from the context. Tex. R. App. P. 33.1(a); Blue v. State,
41 S.W.3d 129, 131 (Tex. Crim. App. 2000). A party's failure to timely and specifically
object at trial forfeits any error. See Blue, 41 S.W.3d at 131. 

 An objection under rule 403 is required to preserve error regarding the admission of
evidence of an extraneous offense. Montgomery v. State, 810 S.W.2d 372, 388 (Tex. Crim.
App. 1991) (op. on reh'g). The record reflects that appellant never raised an objection to
the complained-of evidence on rule 403 grounds. (4) Appellant did not object on these
grounds. Thus, appellant has failed to preserve the error for review. See id.; see also Tex.
R. App. P. 33.1(a). 

 Moreover, even if the issue had been preserved, and assuming there was an actual
error in the admission of the testimony, appellant forfeited her right to complain of any error
because the same evidence came in, without objection, through testimony solicited by
appellant's counsel. See Rogers v. State, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993)
(stating that an appellant waives any error regarding improperly admitted evidence if that
same evidence is brought in later by the defendant or by the State without objection);
Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

 Thus, even if it were properly before this Court, we would overrule appellant's second
issue. 


IV. Improper Jury Argument


 In her third issue, appellant claims the trial court erred by overruling her objection to
the State's closing argument and in permitting the State to argue that appellant left the
scene because she was intoxicated or hiding something in her vehicle. Appellant claims
this was improper jury argument. The State claims the complained-of argument was made
in response to defense counsel's argument. (5) 

 Proper jury argument falls into one of four general categories: (1) summation of the
evidence presented at trial; (2) reasonable deduction from the evidence; (3) answer to
argument of opposing counsel; or (4) a plea for law enforcement. See Benn v. State, 110
S.W.3d 645, 650 (Tex. App.-Corpus Christi 2003, no pet.) (citing Jackson v. State, 17
S.W.3d 664, 673 (Tex. Crim. App. 2000)). Even when arguments exceed the boundaries
of these permissible groups, they will not constitute reversible error unless they are
manifestly improper, violate a mandatory statute, or inject new, harmful facts into the case. 
Id. (citing Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); Reed v. State,
991 S.W.2d 354, 362-63 (Tex. App.-Corpus Christi 1999, pet. ref'd)). The remarks must
have been a willful and calculated effort on the part of the State to deprive appellant of a
fair and impartial trial. Id. (citing Wesbrook, 29 S.W.3d at 115). 

 Appellant complains about the following argument made by the State, "Why wouldn't
[appellant] stop after hitting Mr. Mendoza? There is [sic] many different reasons why she
might not have stopped. Perhaps she was intoxicated. Perhaps she had something illegal
in her car. She didn't want to get charged with an even more serious crime."

 Defense counsel objected to the argument claiming, "there was no evidence of
something in the car. He is speculating, and that is not in evidence . . . ." The State
responded that appellant had opened the door to the evidence because "[defense counsel]
said why would [appellant] stop." The trial court overruled the objection. 

 The complained-of jury argument was made by the State after defense counsel's
closing argument, in which defense counsel asked, "[w]hy wouldn't [appellant] stop if she
had known [she hit a person]?" and "It's possible that she didn't see him - - why wouldn't
she stop?" "Why wouldn't she have stopped if she had known she hit a human being, if she
made a mistake?" "[Appellant] was not intoxicated. [Appellant] told you she didn't see him. 
He was wearing black . . . . [I]t was raining, it was dark and black . . . ."

 To preserve jury argument error in a criminal case, a defendant must (1) object to
the argument, (2) if the objection is sustained, move for an instruction to disregard, and (3)
if the instruction is given, move for a mistrial. Cook v. State, 858 S.W.2d 467, 473 (Tex.
Crim. App. 1993). The failure to preserve error by making a timely objection each time the
evidence is offered forfeits the right to complain. See Tex. R. App. P. 33.1; Fuentes v.
State, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999) (stating that the objecting party must
continue to object each time the objectionable evidence is offered); Ethington, 819 S.W.2d
at 858-59 (same); Posey v. State, 840 S.W.2d 34, 37 (Tex. App.-Dallas 1992, pet. ref'd)
("Defense counsel must object every time allegedly inadmissible evidence is offered."). 

 Here, the record shows that the State had previously made these statements without
objection, and as stated above, the complained-of evidence came in through testimony
solicited by appellant's counsel. See Rogers, 853 S.W.2d at 35; Ethington, 819 S.W.2d at
858. A trial court's erroneous admission of evidence will not require reversal when it
received other such evidence without objection, either before or after the complained-of
ruling. Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Thus, we conclude
appellant forfeited her right to complain on appeal as to the impermissibility of this
argument.

 Moreover, even if the issue had been preserved, we would nonetheless conclude
that any alleged misconduct was neither extreme nor improper, and it did not inject new and
harmful facts into evidence. See Benn, 110 S.W.3d at 650. Rather, the argument was in
response to defense counsel's closing argument and was merely a summation of evidence
that was introduced during trial without objection. 

 Accordingly, appellant's third issue is overruled.

V. Jury Deliberation


 In her fourth issue, appellant claims that the jury's deliberation, which lasted "a mere
17 minutes," constituted a "rush to judgment" which created the appearance of unfairness
and effectively deprived her of her constitutional rights to due process and to a fair trial. 

 In support of her contention, appellant cites to the Fifth and Sixth Amendments of the
United States Constitution and to article one, section ten of the Texas Constitution. See
U.S. Const. amends. V, VI; Tex. Const. art. I, § 10 (providing that "[i]n all criminal
prosecutions the accused shall have a speedy public trial by an impartial jury."). (6) Appellant
further cites to article 35.22 of the Texas Code of Criminal Procedure. Tex. Code Crim.
Proc. Ann. art. 35.22 (Vernon 2006). Article 35.22 provides the following oath which is to
be administered to the jury: "You and each of you do solemnly swear that in the case of the
State of Texas against the defendant, you will a true verdict render according to the law and
the evidence, so help you God." See id. Appellant also cites to article 38.03 of the code
of criminal procedure. See Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2006). 
Article 38.03 provides, in relevant part that "[a]ll persons are presumed to be innocent." See
id. 

 Appellant also cites to the Texarkana Court of Appeals' opinion in Employers Ins. of
Wausau v. Horton in which Wausau urged the court to apply the federal "appearance of
fairness" test to determine whether the trial judge violated Wausau's due process rights. 
See Horton, 797 S.W.2d 677, 681 (Tex. App.-Texarkana 1990, no writ.). (7) The court
explained that the "appearance of fairness" test requires that the court must avoid creating
an appearance of unfairness through an unnecessary rush to judgment. Id. (citing
Fitzgerald v. Penthouse Int'l, Ltd., 776 F.2d 1236 (4th Cir. 1985)). In Wausau, the court
concluded "the jury did not rush to judgment, but took two hours and twenty minutes to
answer twenty jury questions. After reviewing the situation in its entirety, we do not find a
due process 'appearance of unfairness.'" Horton, 797 S.W.2d at 681.

 With the above authority as a foundation, appellant claims that "[her] rights were
violated here: she was deprived of her right to due process, to trial by an impartial jury, to
the presumption of innocence, and to a jury that rendered its verdict in accordance with the
law and the evidence." And, appellant further claims that, "[t]his jury rushed to judgment,
thereby creating the appearance of unfairness." As evidence in support of her rush to
judgment--appearance of unfairness-argument appellant claims the jurors could not have,
"in 17 minutes" (1) traveled to a jury room on a different floor of the courthouse, (2) elected
a foreman, (3) read the four-page charge plus the verdict form, (4) carefully and impartially
considered all the evidence in the case, (5) taken a vote, and (6) returned with a verdict,
without having rushed to judgment. (8) Appellant further claims that the "excessively quick
verdict evidences the jury's bias, prejudice, and failure to follow the court's instructions." 
 After reviewing the situation before us in its entirety, we do not find a due process
"appearance of unfairness." Appellant has not directed our attention to any authority
proscribing a set amount of time for jury deliberations or holding that short periods of
deliberation necessarily constitute a "rush to judgment." Accordingly, we do not find that the
circumstances involved in the present case impaired appellant's constitutional or due
process rights. Appellant's fourth issue is overruled. 


VI. Ineffective Assistance of Counsel


 In her fifth issue, appellant claims her trial counsel was ineffective because of "some
purported act(s) or omission(s) of defense counsel." Specifically, she claims, "[b]ecause
there was no evidence to support the State's theory, none of the testimony should ever
have been introduced or admitted." Appellant argues that, "[t] o the extent that [appellant's]
counsel failed to prevent the introduction of those inferences [regarding alcohol and drugs],
speculative comments, and clearly prejudicial statements, his acts and/or omissions cannot
be validated." Thus, she argues, "[t]here is reasonable probability that [appellant] would
have obtained a more favorable result had not the State been permitted to harp on its
unsubstantiated theory. She was convicted in 17 minutes and given nearly the maximum
punishment for this tragic accident." 

 Claims alleging ineffective assistance of counsel are evaluated under the familiar
standard of Strickland v. Washington, which requires that the defendant prove: (1) that
counsel's representation or advice fell below objective standards of reasonableness; and,
(2) the result of the proceeding would have been different but for trial counsel's deficient
performance. Strickland v. Washington, 466 U.S. 668, 686-94 (1984); Mata v. State, No.
PD-1724-04, 2007 Tex. Crim. App. LEXIS 695, at **5-6 (Tex. Crim. App. June 6, 2007); Ex
parte Nailor, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004). The defendant bears the burden
of proving this claim by a preponderance of the evidence. Jackson v. State, 973 S.W.2d
954, 956 (Tex. Crim. App. 1998). 

 In order for an appellate court to find trial counsel ineffective, "[a]ny allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness." Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999); see Mata, 2007 Tex. Crim. App. LEXIS 695, at **10-11. Generally, when
the record is silent as to counsel's motivations for tactical decisions, an appellant cannot
overcome the "strong presumption that counsel's conduct was reasonable." Mata, 2007
Tex. Crim. App. LEXIS 695, at *10 n.14; Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App.
2001). "In the majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel's actions." Mallett, 65 S.W.3d at 63;
Mata, 2007 Tex. Crim. App. LEXIS 695, at **9-10. 

 Unless the challenged conduct was "so outrageous that no competent attorney would
have engaged in it," appellate courts will not speculate in order to find trial counsel's
reasoning or strategy rendered his performance deficient. Goodspeed v. State, 187 S.W.3d
390, 392 (Tex. Crim. App. 2005) (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001)). "[T]he presumption that trial counsel's performance was reasonably based in
sound trial strategy, coupled with the absence of any supporting evidence in the record of
unreasonableness, compels a reviewing court to consider ways in which trial counsel's
actions were within the bounds of professional norms." Mata, 2007 Tex. Crim. App. LEXIS
695, at *12.

 As an initial matter, we note that the failure to object to inadmissible evidence does
not necessarily constitute ineffective assistance of counsel. See McFarland v. State, 845
S.W.2d 824, 846 (Tex. Crim. App. 1992); Castoreno v. State, 932 S.W.2d 597, 603 (Tex.
App.-San Antonio 1996, pet. ref'd); Greene v. State, 928 S.W.2d 119, 123 (Tex. App.-San
Antonio 1996, no pet.). Moreover, isolated failures to object generally do not constitute
error in light of the sufficiency of the overall representation. Johnson v. State, 691 S.W.2d
619, 627 (Tex. Crim. App. 1984). 

 Given the standard of review for effectiveness of counsel, appellant has not met her
burden to prove that trial counsel's representation fell below an objective standard of
reasonableness. The record does not address counsel's rationale regarding the
complained-of-actions or omissions, nor does it affirmatively demonstrate the alleged
ineffectiveness. Thus, the record is insufficient to rebut Strickland's presumption that the
challenged actions of trial counsel were the result of "sound trial strategy." See Strickland,
466 U.S. at 689. Moreover, given the record evidence, appellant has failed to show that the
result of the proceeding would have been different. Id. Most importantly, because
intoxication and/or drug use are not elements to the offense of failure to stop and render
aid. See Tex. Transp. Code Ann. §§ 550.021, 550.023. And, to the extent appellant argues
that evidence regarding intoxication and/or drug use may have influenced the jury's finding
that she failed to stop, we note that any such evidence would not have such impact
because, again, all that was required was a showing that appellant failed to stop, regardless
of the reason. See Tex. Transp. Code Ann. §§ 550.021, 550.023. Appellant's fifth issue
is overruled.

VII. Conclusion

 The judgment of the trial court is affirmed. 



 _________________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 16th day of August, 2007.
1. Testimony revealed Mendoza had a blood alcohol level of .133, the result of consuming an estimated 6-8
beers.
2. During closing, the State explained that Mendoza's head had smashed into the windshield and then his body
flipped over the truck.
3. We note that questions surrounding inconsistent testimony of a witness are to be weighed by the jury in its
determination of guilt and innocence. See Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim. App.2000). A jury
was entitled to infer from this testimony that appellant was not being truthful about her knowledge of the
accident. See id. (finding a jury may choose to believe some testimony and disbelieve other testimony in its
determination of guilt and innocence). 
4. The only objection lodged in relation to the complained-of evidence was during the testimony of Deputy
Standlee when he answered the following in response to the State's question regarding why he wanted to
locate the truck that had struck Mendoza: 


Well, for one thing, it's against the law to leave the scene of the accident, and we had to
locate the driver, and we didn't know if the driver might be intoxicated. Or the reason leaving
the scene you're probably guilty of something. You're either intoxicated or on some type of
narcotics, no driver's license. 

 

 After Standlee answered the question, defense counsel objected, stating, "I'm going to object to giving
opinions like that. There is no evidence." The court sustained the objection. However, defense counsel never
lodged an objection on rule 403 grounds. See Tex. R. Evid. 403. 


 If a complaint on appeal does not comport with an objection made at trial, the issue is not preserved
for appellate review. See Tex. R. App. P. 33.1; Goff v. State, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996). 
5. A prosecutor may answer jury arguments by the defense as long as the response does not exceed the scope
of the invitation. Andujo v. State, 755 S.W.2d 138, 144 (Tex. Crim. App. 1988). 
6. The Fifth Amendment of the United States Constitution provides:


No person shall be held to answer for a capital, or otherwise infamous crime, unless on a
presentment or indictment of a Grand Jury, except in cases arising in the land or naval
forces, or in the Militia, when in actual service in time of War or public danger; nor shall any
person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be
compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty,
or property, without due process of law; nor shall private property be taken for public use,
without just compensation.


U.S. Const. amend. V. The Sixth Amendment provides:


In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by
an impartial jury of the State and district wherein the crime shall have been committed, which
district shall have been previously ascertained by law, and to be informed of the nature and
cause of the accusation; to be confronted with the witnesses against him; to have compulsory
process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his
defence.


U.S. Const. amend. VI.
7. In Wausau, Wausau contended that the trial court denied it its due process rights under the Fourteenth
Amendment of the United States Constitution and under article one, section nineteen of the Texas
Constitution by forcing Wausau to commence its case-in-chief at 7:52 p.m. to a jury that had already worked
twelve hours that same day; by forcing Wausau to present its closing argument at 10:23 p.m. before a jury
that had worked more than fourteen hours that same day; by forcing the jury to commence deliberations at
10:55 p.m.; and by forcing the jury to continue deliberating until it produced a verdict, which did not occur until
the jury had worked seventeen hours. Employers Ins. of Wausau v. Horton, 797 S.W.2d 677, 679 (Tex.
App.-Texarkana 1990, no writ.). 


 Wausau also contended that the trial court denied it equal protection under the Fourteenth
Amendment to the United States Constitution and under article one, section 3 of the Texas Constitution by
allowing Horton to present his entire case-in-chief to a fresh and alert jury and by denying Wausau this
opportunity by forcing it to present its case to a weary jury. Id. Wausau further contended that the trial court
denied the it its right to a meaningful jury trial under article one, section fifteen and article five, section ten of
the Texas Constitution by forcing the jury to commence deliberations at 10:55 p.m. and continue deliberating
until it produced a verdict. Id. 
8. We note that, in the present case, the trial court read the charge of the court to the jury prior to it retiring for
deliberation, and the jury was presented with a one-page "guilty" or "not guilty" verdict form.